## CARSTAIRS v. UNITED STATES.

### No. 17522.

District Court, E. D. Pennsylvania.
Jan. 15, 1936.

KIRKPATRICK, District Judge.

This action is to recover $7,161.93 collected from the estate of Charles S. Carstairs, as additional income tax and interest for the year 1928. The trial was to the Court without a jury.

In his return for the decedent for 1928 the Executor, among other items, excluded

from gross income $29,166.66 of earned income received in 1928 from sources without the United States; deducted from gross income $7,305.03 of New York State income tax paid in 1928 on foreign income received in 1927; and credited against the federal tax part of a British income tax of $1,185.13 accrued and paid in 1928 on foreign income received in 1927. The Commissioner of Internal Revenue disallowed such exclusion, deduction and credit and levied the additional tax and interest in suit.

I. The first question is whether $29,166.66 earned income received by the decedent in 1928 from sources without the United States should have been excluded from gross income for that year. The relevant statute is Sec. 116(a) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 386, which provides " * * * the following items shall not be included in gross income and shall be exempt from taxation under this title:

"(a) Earned Income from Sources Without United States. In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States * * * ; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection."

Was the decedent a "bona fide nonresident of the United States for more than six months during the taxable year"? Physically he was in the United States from January 1 to February 24, on which date he sailed for England where he remained until July 9, the date of his death.

██ For purposes of the income tax, residence is not the same thing as domicile. This is well settled as to taxability, particularly with respect to resident and nonresident aliens. See Bowring v. Bowers, 2 Cir., 24 F.2d 918, and Regulations 74, Art. 1022. And I see no reason why residence should mean one thing in that connection and something else where it determines an exemption, nor why it should have a special and peculiar meaning in this particular exemption clause. If, as the defendant contends,

the Committee Report shows that this clause was inserted in relief of salesmen and foreign representatives of American firms, travelling abroad solely for the purposes of their business, it is difficult to see why the statute did not say so, instead of carefully specifying bona fide nonresidents, thus excluding by omission residents of this country abroad for a specific and temporary purpose and accomplishing a result the opposite of that which the defendant says was intended.

But residence means something other than mere physical presence in a particular place. Of course, physical presence for some substantial part of the time is necessary and it may sometimes be a controlling factor (a man who has never been in England cannot have a residence there), but a factor at least equally important is the state of mind of the subject of the inquiry. To ascertain that, his prior and subsequent life is all more or less relevant and for that purpose the evidence offered in this case of the decedent's occupation, ownership of houses, business and customary modes of living dating back to 1905 and appearing in the stipulation, as well as the evidence of the passports and other declarations appearing in the testimony is admitted and considered.

This evidence showed that soon after 1900 Mr. Carstairs, an American citizen, who lived in New York during his earlier life and retained his New York domicile, removed to England to found and take charge of the British establishment of M. Knoedler & Company, art dealers, and from then on until his death he lived in England and on the Continent, making a business trip to the United States for a couple of months or so every winter. He had a house in London, at 3 Chesterfield Street, where he lived with his family, a country place in England, near Rye, and a housekeeping apartment in Paris, where Knoedler & Company also had a place of business. When the decedent came to New York for his yearly trips he stayed at a hotel until perhaps 1920, after which he lodged with his son Carroll at a bachelor apartment at 24 East 62nd Street, and after Carroll's marriage about 1924 he kept the apartment jointly with his brother James Carstairs. The decedent's wife when she came with

him to New York stayed at a hotel. His son Carroll was in the British army during the war.

In his customs declarations when he entered the United States the decedent described himself as a nonresident, as did his son Carroll until he married and became a resident of the United States. In his passport application in 1927 the decedent stated that he had resided "outside the United States at the following places for the following periods: England—with yearly trips to U. S. A. from 1906 to date"; and in his 1925 application that he had "resided outside the United States at the following places for the following periods: England and travel, from 1905 to date." To the latter application was attached an "affidavit to explain protracted foreign residence," in which the decedent stated, among other things: "Since establishing a residence abroad I have made the following visits to the United States: About yearly visits to the United States."

■ I think it clear that, regardless of his physical whereabouts during the first seven weeks of the year 1928, Mr. Carstairs was a bona fide nonresident of the United States from January 1, 1928, until he died on July 9, 1928, a period of more than six months and that the executor was right in excluding from his gross income the sum earned and received from sources without the United States.

II. The Executor made another deduction which we consider next. During 1928 the decedent paid an income tax of $7,477.-77 to the State of New York based upon his 1927 income. His income during that year had been $271,009.02 of which almost all (actually, $264,748.42) was earned abroad and therefore not included in his gross income as returned for the federal tax. Consequently, almost all of the New York tax (actually $7,305.03) was computed and paid upon income earned from foreign sources. It was this latter amount which was deducted by the executor from his net income in the questioned return for 1928.

The last clause of Sec. 116(a) says "but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection." The question is, was the deduction which was taken for the New York income tax a deduction "properly allocable to or chargeable against" Mr. Carstairs' foreign earnings for 1927 which he had excluded on his federal return?

It appears in the agreed statement of facts that the New York tax was "attributable to and allocable to" the exempt portion of his income but I do not think that the stipulation was intended to foreclose the issue.

■ If the words of the Statute were "chargeable against" only, there would be much more ground for the plaintiff's contention that the clause was inserted solely in order that travelling and other expenses incurred in earning the foreign income could not be claimed as an additional deduction against income from other sources. Such expenses are of course strictly "chargeable against" the foreign earned income. But I should think that the additional words "allocable to" would not have been used unless it was intended to add something by them, and it seems entirely reasonable, that when Congress allowed a general exemption on all income earned abroad, it was intended at the same time to take away every other exemption traceable to such income. "Allocable" is a word of rather broad meaning and I am of the opinion that the New York income tax (or rather the portion of it deducted by the Executor) is an item correctly described as allocable to the foreign income.

Speaking very literally and precisely, the foreign earned income to which the New York tax was allocable was not "excluded from gross income under this subsection." That is, it was not excluded by virtue of Sec. 116(a) of the Act of 1928, but under a corresponding and almost exactly similar provision of the Act of 1926, § 213, 26 U.S. C.A. Int.Rev.Acts, page 163. But to give the clause so narrow a meaning would defeat the purpose (which I believe caused its insertion) to allow only one general deduction or exemption in connection with income earned from sources abroad. It may be that, for some purposes connected with the income tax law, it is proper to consider each year as a separate unit, but there is

also ample authority for construing one act in connection with previous acts so as to avoid a disconnected and fragmentary development of the law and to effectuate a plain purpose. "The very essence of construction is the extension of the meaning of a statute beyond its letter * * *." Williams v. Gaylord, 186 U.S. 157, 163, 22 S. Ct. 798, 800, 46 L.Ed. 1102. Incidentally, the literal construction really results in broadening the exemption and the rule that tax exemptions shall be strictly construed is therefore against it. I do not think that it is by any means an unwarranted interpretation of the clause to read the words "this subsection" as including a corresponding and practically identical subsection of the statute in force when the exempt income was earned. See Wright v. Cunningham, 115 Tenn. 445, 91 S.W. 293.

III. In addition to the deductions claimed and discussed above the executors also took a credit against the tax in the amount of $1,185.13 which was the amount of the British income tax paid by the decedent in 1928 on foreign income received by him in 1927. The credit was taken under Sec. 131(a) (1) and (b) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 394, which need not be quoted here.

The plaintiff agrees that if the foreign commissions of $29,166.66 were properly excluded from the decedent's gross income for federal income tax purposes no credit for the British tax would be allowable, because the limitation of Subsec. (b) of Sec. 131 provides that the credit shall not exceed the same proportion of the tax, which the taxpayer's net income from sources without the United States bears to his entire net income, and none of the *net* income as shown by his return was from sources without the United States. Therefore if the exclusion of the foreign income was correct, (and I have decided that it was) no credit would be allowable.

But the plaintiff contends that, though he would not be entitled to credit against the tax he is entitled to a deduction from the income in the amount of the British tax. This is the same question as is presented by his claim for allowance of the deduction of the New York income tax. Like the New York income tax, I think that the Brit-

ish tax is "allocable to" the foreign commissions which were excluded from gross income, and it follows that under the last clause of Sec. 116(a) he is not entitled to a deduction for it.

IV. It follows from the above that the correct net income of the decedent for the year 1928 was $29,987.43 and that no credit for the British tax is to be allowed against a tax properly computed on this amount.

Judgment may be entered for the amount of the overpayment and interest arrived at in accordance with this conclusion.

I adopt the agreed statement of facts filed, as special findings. In addition I affirm all of the plaintiff's requests for findings of fact and I deny the defendant's second request for finding of fact.

I affirm the plaintiff's first request for conclusion of law and deny the second, third and fourth requests. I deny the defendant's first request for conclusion of law, I affirm its second, third and fourth requests for conclusions of law and I deny its fifth request for conclusion of law.