ANNE MOEN BULLITT BREWSTER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3672–67. Filed October 29, 1970.

*Thomas E. Jenks, Herbert L. Awe,* and *Michael Mulroney,* for the petitioner.

*Dorrance R. Belin,* for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in petitioner's Federal income tax for the years 1957 through 1960 as follows:

| Year | Deficiency |
| --- | --- |
| 1957 | $14,296.77 |
| 1958 | 12,439.58 |
| 1959 | 29,011.45 |
| 1960 | 17,900.73 |

Taxable year 1956 is also involved herein but only so far as it relates to a net operating loss in that year which was carried forward to 1957 and deducted therein.

The primary issue for our determination is whether during the years in question certain expenses claimed as deductions by petitioner are allowable or are disallowed by section 911(a), I.R.C. 1954,[1] as being "properly allocable to or chargeable against amounts excluded from gross income," such income being excludable exempt "earned income" as defined in section 911(b). The resolution of this issue will rest with our determination as to whether or not petitioner had any "earned income" as defined in section 911(b), for the years in question.

### FINDINGS OF FACT

All of the facts have been stipulated and the case has been submitted under Rule 30. The stipulation and exhibits attached thereto are incorporated herein by this reference.

During each of the years 1956 through 1960, inclusive, petitioner was a citizen of the United States and lived at Palmerstown Stud, at Kill, County Kildare, Ireland. There she engaged in the business of farming, raising cattle, and breeding, training, and raising horses. Petitioner filed her individual Federal income tax returns for the taxable years 1956, 1957, 1958, 1959, and 1960 with the district director of internal revenue, Baltimore, Md. For each of the years 1956 through 1960, inclusive, petitioner was a bona fide resident of a foreign country within the meaning of section 911(a)(1).

During each of the years 1956 through 1960, inclusive, petitioner's farming business was one in which both her personal services and capital were material income-producing factors. During each of the following years, petitioner received the following amounts of gross income from her farming business, and incurred and paid the following amounts of farm expenses, which resulted in the following net farm losses:[2]

| Year | Gross farm income | Farm expenses | Net farm loss |
|------|------------------|---------------|---------------|
| 1956 | $16,538.60 | $96,701.80 | $80,163.20 |
| 1957 | 19,328.40 | 118,258.40 | 98,930.00 |
| 1958 | 38,903.11 | 141,350.19 | 102,447.08 |
| 1959 | 13,109.60 | 133,148.40 | 120,038.80 |
| 1960 | 34,514.20 | 130,262.48 | 95,748.28 |

On her tax returns for the years involved herein and for 1956 petitioner did not exclude any amount under section 911(a) as "earned

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified. The sections here involved are set out more fully *infra.*

[2] The amounts set forth as farm expenses reflect adjustments made by the Commissioner which are not disputed by petitioner.

income" and correspondingly availed herself of all deductions relating to the operation of her business.

For each of the years 1956 through 1960, inclusive, the Commissioner determined that a portion of petitioner's gross farm income constituted earned income which the Commissioner excluded from her gross income pursuant to section 911. The Commissioner also determined that a like proportion of petitioner's farm expenses was properly allocable to or chargeable against her exempt earned income with the consequence that the proportionate amounts were not allowable deductions.

## OPINION

The relevant parts of section 911 are as follows:

SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items *shall not be included in gross income and shall be exempt from taxation* under this subtitle:

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, *amounts received* from sources without the United States (except amounts paid by the United States or any agency thereof) *which constitute earned income attributable to services performed* during such uninterrupted period. * * *

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

An individual *shall not be allowed, as a deduction from his gross income, any deductions* (other than those allowed by section 151, relating to personal exemptions) *properly allocable to or chargeable against amounts excluded from gross income under this subsection.*

(b) DEFINITION OF EARNED INCOME.—For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. *In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors,* under regulations prescribed by the Secretary or his delegate, *a reasonable allowance as compensation for the personal services rendered by the taxpayer,* not in excess of 30 percent of his share of the net profits of such trade or business, *shall be considered as earned income.*

[Emphasis supplied.]

Petitioner's argument is a plausible one—i.e., since her business produced only losses and no net profits, she had no earned income to exclude; and having no excludable income, her claimed deductions are allowable because they were allocable or chargeable against nonexcludable gross income rather than against amounts excluded.

We do not think this argument is persuasive. The applicable statute

is not permissive or elective.[3] It reads that certain items *shall not* be included in gross income. One of the items which *shall not* be included is "earned income" and "earned income" is defined to include "a reasonable allowance as compensation for the personal services rendered by the taxpayer" in the case of a taxpayer engaged in a business in which both personal services and capital are material income-producing factors. It is stipulated that the taxpayer here was engaged in such a business. And, following the statute, the Commissioner has made such an allowance in his determination. No question about the reasonableness of the allowance is raised. The statute further states that such an allowance "shall be considered as earned income" and therefore shall "not be included in gross income." This also has been done by the Commissioner in his determination.

Petitioner seizes upon the words "not in excess of 30 percent of his share of the net profits of such trade or business" appearing in section 911(b), *supra*, and argues that this is an indication that unless there are "net profits" the statute does not apply to her situation. We do not agree with petitioner on this point. As the Commissioner argues, this language simply places a limitation on the amount to be treated as "earned income" in situations where there are net profits. This limitation does not come into play here, where there are only losses.

Both parties cite and rely upon numerous G.C.M.'s, Rev. Rul.'s, Mim.'s and a few cases in support of their positions. We are not going to try to follow the maze which these citations constitute. Suffice it to say that we have studied them and find them unhelpful.

One case gives us pause. That is *Warren R. Miller, Sr.*, 51 T.C. 755, which deals with the same definition of "earned income" with which we are here faced, but for the purpose of computing the retirement income credit provided by section 37, I.R.C. 1954. The opinion in *Miller* in correlating sections 911(b) and 37 held that 911(b) "In the case of a taxpayer 'engaged in a trade or business in which both personal services and capital are material income-producing factors,' * * * earned income is keyed to the 'net profits of such trade or business,' not to the gross profits thereof." This language would seem to support petitioner's position here, if we had the problem of coordinating two sections of the Code and another reading would lead to an anomalous result. We see no such problem in this case.

We cannot fault the Commissioner's determination that a portion of petitioner's gross farm income constituted excludable earned income. The Court having so concluded, the parties have agreed on the amounts of such earned income.

Even so, petitioner contends that no part of her farm expenses are

<hr>

[3] See *Frieda Hempel*, 6 T.C.M. 748, 752, 1947 P-H. T.C. Memo. par. 47,183.

properly allocable or chargeable against her exempt earned income and therefore all of such expenses are properly claimed as deductible. This poses another problem. The Commissioner determined that a portion of such expenses was so allocable and chargeable and so not allowable as deductions under section 911(a) (1). No breakdown of the expenses appears in the record and the only itemization is on schedules attached to the income tax returns. The Commissioner did not disallow or allow the expenses item by item. He disallowed a portion of the total amount. We think, in a case of this kind, an allocation of expenses is properly to be made. It seems certain that a portion of the expenses are allocable to petitioner's personal services. This the Commissioner has done in his determination and we sustain him. Indeed, the parties have stipulated:

If the Court should sustain respondent's determination that petitioner realized excludable "earned income" under section 911 from her farming business during the years 1956 through 1960, inclusive, then the parties agree that such earned income is in the following amounts:

| Year | Amount |
| --- | --- |
| 1956 | $4, 961. 58 |
| 1957 | 5, 798. 52 |
| 1958 | 11, 670. 93 |
| 1959 | 3, 932. 88 |
| 1960 | 10, 354. 25 |

If the Court should sustain respondent's determination that petitioner realized excludable "earned income" under section 911 from her farming business during the years 1956 through 1960, inclusive, and that some expenses were allocable to or chargeable against such earned income and not allowable as deductions from gross income, then the parties agree that the amounts of such expenses are as follows:

| Year | Amount |
| --- | --- |
| 1956 | $5, 582. 20 |
| 1957 | 7, 687. 98 |
| 1958 | 7, 807. 61 |
| 1959 | 8, 023. 36 |
| 1960 | 8, 346. 20 |

Reviewed by the Court.

*Decision will be entered under Rule 50.*

STERRETT and QUEALY, *JJ.*, did not participate in the consideration and disposition of this case.

---

FEATHERSTON, *J.*, dissenting: I respectfully dissent. In my opinion, the majority's interpretation of section 911 leads to illogical results in at least two respects. First, if petitioner had earned as much as $1 of net profits, for example, a maximum of 30 cents would have been excludable from her gross income as reasonable compensation for

her services; however, because she suffered net losses, large amounts—over $11,000 in 1 of the years—are here excluded from her gross income as theoretically reasonable compensation for her services. In every case, the amount of "allocable" deductions to be disallowed under the section is geared to the "amounts excluded from gross income." I see no logic (or statutory support) for this wide discrepancy. Second, petitioner receives no tax benefits whatever under the exclusion provisions of section 911; yet under the majority's reasoning she is denied deductions for which she would admittedly qualify if she had lived at least part of each year in the United States. This conversion of section 911 from a benefit to a penalty provision, in my opinion, subverts its purpose—to promote foreign trade by encouraging citizens to live and work abroad.

These anomalies are not required in order to achieve the legislative objectives of section 911. The reason for disallowing the deductions allocable to the amounts excluded from gross income under section 911 is to avoid allowing the double tax benefits of both the exclusion of income and the deduction of expenses incurred in earning exempt income. But entrepreneurs obtain no tax benefits whatever under the section unless they realize net profits from their foreign business. The language of the last sentence of section 911(b), taken from the definition of earned income first adopted as part of the Revenue Act of 1924, was quite clearly intended to put entrepreneurs, specifically farmers and small businessmen, on an equal footing with employees. See 65 Cong. Rec. 2849-2854 (1924). That purpose was achieved by keying a service-capital entrepreneur's excludable earned income to his "net profits"—the only possible source of any "reasonable compensation" for personal services, any return on his capital, or any tax benefit under section 911. To say that a service-capital entrepreneur who incurs a net loss from operating his business nevertheless earns some theoretical amount of compensation is to say that all of his net loss plus his theoretical compensation are attributable to his capital investment—a wholly unrealistic concept. I do not think the section was intended to deny otherwise allowable deductions where a taxpayer operating a service-capital business abroad realizes a net loss.

The words, "not in excess of 30 percent of his share of the net profits of such trade or business," should be read as an integral part of the last sentence of section 911(b), not merely as a limitation which comes into play only when there are net profits. Thus, if a foreign service-capital business conducted by a U.S. citizen, resident abroad, earns sufficient revenues to produce net profits, the exclusion for compensation for services may not exceed 30 percent thereof, and the deductions allocable to the amounts so excluded are denied; however, if the same business endeavor results in an operating loss, no amount is excluded

from gross income and no deductions are disallowed under section 911(a).

This reading would avoid subverting the purposes of section 911, i.e., making it a potential penalty provision rather than a tax benefit; would be consistent with the legislative objective of placing entrepreneurs on the same footing as employees; and would avoid the complications resulting from interpreting the same statutory language one way in applying one section and another way in applying another. Cf. *Warren R. Miller, Sr.,* 51 T.C. 755 (1969); sec. 37; sec. 1348.

WITHEY and FORRESTER, *JJ.,* agree with this dissent.