**Anne Moen Bullitt BREWSTER,
Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE.**

**No. 71–1485.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 20, 1972.

Decided Nov. 21, 1972.

Rehearing Denied Jan. 23, 1973.

Mr. Michael Mulroney, Washington, D. C., with whom Mr. Thomas E. Jenks, Washington, D. C., was on the brief, for appellant.

Mr. Loring W. Post, Atty., Tax Div., Dept. of Justice, for appellee.

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

PER CURIAM:

Taxpayer, a citizen of the United States, was a bona fide resident during the taxable years 1956–1960 of Ireland, where she engaged in the business of farming, raising cattle, and breeding, training and racing horses, in which both her personal services and capital were income-producing factors. She is therefore governed by Section 911 of the Internal Revenue Code of 1954, relating to earned income from sources without the United States.[1]

The gross income taxpayer received in Ireland from her farming business was exceeded each year by the farm expenses incurred there, resulting in a net farm loss. On her tax returns, appellant did

---

[1] Sec. 911. Earned income from sources without the United States.

(a) General rule.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

(1) Bona fide resident of foreign country.—In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. * *

not exclude any portion of her gross farm income as "earned income" under § 911, and she availed herself of all the deductions relating to the farm business. Her net farm losses in Ireland served in effect to reduce the tax otherwise payable on income from sources within the United States.

The Commissioner determined that a portion of her gross income from her farming business in Ireland constituted "earned income," which was excludible from her gross income under § 911(a) of the Code, and that certain expenses of that business were allowable to or chargeable against such earned income and hence, also by virtue of § 911(a), were not allowable as deductions from gross income.

■■■ The central question before us is whether under § 911 there can be "earned income" from a business that is operated at a loss. The Tax Court, en banc, answered that question in the affirmative, and provided us with the benefit of a thorough discussion of the issues by Judge Tietjens for the majority and by Judge Featherstone for the three dissenting members. Brewster v. Commissioner of Internal Revenue, 55 T.C. 251 (1970). We affirm. The apparent anomaly of "earned income" from a business operated at a loss is ascribable

to the fact that the statutory concept of "earned income" in § 911 is structured in terms of gross income rather than net profits.[2] As the Tax Court pointed out, the exclusionary provisions with respect to earned income are mandatory. The taxpayer was engaged in a business in which both personal services and capital are material income-producing factors, and the last sentence of § 911(b) provides that in that event "a reasonable allowance as compensation for the personal services rendered by the taxpayer . . . shall be considered as earned income." It is stipulated that appellant's personal service was a material income-producing factor. The Commissioner properly proceeded to ascertain what portion of taxpayer's gross income from the farming business was reasonably ascribable to personal services. That amount was, under § 911, "earned income" that was required to be excluded from her gross income. This necessitated the disallowance of deductions properly allocated to the amounts so excluded from gross income. There is no question as to reasonableness of amounts,[3] nor are there any other questions of fact presented to this court.

■■■ The taxpayer and the dissenting judges rely upon the provision of § 911 that the allowance for "earned income" shall not exceed 30% of the net profits

An individual shall not be allowed, as a deduction from his gross income, any deductions (other than those allowed by section 151, relating to personal exemptions) properly allocable to or chargeable against amounts excluded from gross income under this subsection.

(b) *Definition of earned income.*—For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or

his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

2. Even taking a simple case, of professional services by a bona fide resident abroad in an occupation where capital is not a material factor, what § 911 directs in its opening sentence is that the fee or other compensation "shall not be included in gross income." And the next sentence provides that he shall not be allowed any deductions allocable to "amounts excluded from gross income."

3. The parties stipulated the amounts to be calculated as earned income in the event the courts should sustain the Commissioner's determination that the taxpayer realized excludable "earned income" under § 911 from her farming business.

of a business in which both personal services and capital are material income-producing factors. As the Tax Court stated, this language places a limitation on the amount to be treated as "earned income" in situations where there are net profits and does not come into play here, where there are net losses. This limitation, placing a ceiling on the amount excluded from gross income when there are net profits, reduces the administrative difficulties inherent in determining a reasonable allowance for personal services in businesses, such as merchandising and farming, where both personal services and capital are material income-producing factors.[4] Generally speaking, the percentage limitation operates, and was intended to operate, so as to break benefits to taxpayers. There is utility in such a limitation when there are profits and the taxpayer has a motivation to maximize the amount of earned income abroad. That the limitation may work a strange result when the net income is small, does not undercut the basic approach of the section under which "earned income" is a concept based on gross income and not net income.

■ The Tax Court's construction, which follows the liberal wording of § 911(b), does not do violence to the basic purpose of § 911, to permit American business men to compete abroad with foreign entrepreneurs, without being subject to double taxation possibilities.[5] It serves the Congressional objective of extending that provision so as to apply not only to the person whose gross income abroad reflects payment for services, but also to the person engaged in a business abroad in which capital as well as personal services are income-producing factors.

■ Even for taxpayers like appellant, whose service-capital business abroad operated at a loss six years running, the major part of the deductions incurred abroad were not ascribed to services, and hence were available to reduce taxation on income from sources within the United States.

Appellant complains that § 911 was intended to "produce a benefit for farmers and small businessmen" and here it is being applied in a way that is disadvantageous. The answer is that § 911's exclusions operate to the advantage of a taxpayer, in general, indeed in the vast preponderance of situations. However, that is not the case when the gross income received abroad for services is exceeded by the deductions ascribable thereto. That was the situation in Frieda Hempel, 6 T.C.M. 743 (1947), a case which exposed certain incongruities in the statutory provision, for that opera singer's large expenses abroad would have been fully deductible from U.S. income if only she had not, apparently by happenstance, received a trifling amount of gross income abroad. Congress extended § 911 to taxpayers, like appellant, whose gross income abroad was produced by both personal services and capital, but we discern no intention to put them in a better position than the taxpayer, like Miss Hempel, whose gross income abroad derives solely from personal services, and is unable to obtain the full benefit of the net loss resulting when business expenses abroad exceed such gross income.

We are aware, as we indicated, that taxpayers have encountered certain incongruities attendant upon the application of the exclusions and limitations written into § 911. That condition is

---

4. The suggestion that there should be solely a "reasonable allowance" standard for earned income was rejected as administratively unworkable where a service-capital business was involved, and in House debate an arbitrary percentage limitation was fashioned. 65 Cong.Rec. 2851 (1924), relating to § 209 of the Revenue Act of 1924 (enacted at that time as a 20% limitation).

5. Commissioner v. Wolfe, 124 U.S.App. D.C. 45, 49, 361 F.2d 62, 66, cert. denied, 385 U.S. 838, 87 S.Ct. 86, 17 L.Ed.2d 72 (1966); Scott v. United States, 432 F.2d 1388, 1393, 193 Ct.Cl. 27 (Ct.Cl.1970); Commissioner v. Mooneyhan, 404 F.2d 522, 525 (6th Cir. 1968), cert. denied, 394 U.S. 1001, 89 S.Ct. 1593, 22 L.Ed.2d 778 (1969).

not welcomed, but it is by no means unusual, and it does not of itself constitute a charter for free-hand revision by the courts of the Congressional language. There is room to depart from literal wording of a tax law where a contrary legislative intent is plainly discernible from other indications. There may also be some room for equitable construction to avoid the kind of gross injustice that can be considered beyond any possible legislative intent. Neither of those conditions is present here. We approve the Tax Court's adherence to the wording of the Code, and are not persuaded that the Tax Court's construction is inconsistent with a plainly discernible Congressional objective ascertained from sources other than its language.[6]

Affirmed.

6. The foregoing discussion, together with the Stipulation, paragraphs 10 and 11, effectively answers the alternative contentions of appellant, which were summarized in the brief as follows: "[E]ven if this taxpayer derives earned income from her service-capital business, Section 911(a) does not sanction the disallowance of deductions. In the alternative, in no event does that section permit disallowance or deductions in excess of excluded earned income."

The record does not itemize the farming expenses, but we discern no basis for contesting the Commissioner's determination that some deductions were attributable to taxpayer's personal services, perhaps for trips involved in finding a breedstock or racing horses. Paragraph 11 of the Stipulation states that if the court should find that some expenses are not allowable as deductions, the parties agree that the amounts of such expenses are as specified.