IVOR CORNMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 789-74.     Filed March 18, 1975.

Ivor Cornman, pro se.
*Robert A. Johnson,* for the respondent.

### OPINION

DAWSON, *Judge:* Respondent determined a deficiency of
$1,545.07 in petitioner's Federal income tax for the year 1970.
The only issue presented for decision is whether section 911(a)[1]
prevents petitioner from deducting ordinary and necessary
expenses incurred in 1970 in connection with his trade or
business of biological research, where he earned no income from
such activities while residing in a foreign country.[2]

All of the facts are stipulated. We adopt the stipulation of facts
as our findings. The relevant facts are summarized below.

The principal place of residence in 1970 of Ivor Cornman
(herein called petitioner) was Fort George, Stony Hill, Kingston
9, Jamaica, and he had been a bona fide resident of Jamaica since
1963. This was petitioner's residence at the time the petition was
filed in this proceeding.

For the taxable year 1970 the petitioner filed a joint Federal
income tax return with his wife, Margaret E. Cornman, with the
Philadelphia Service Center, Philadelphia, Pa.

Petitioner and his wife are both citizens of the United States.
Petitioner has been engaged in biological research, either as a

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless
otherwise noted.

[2] The parties agree that the expenses incurred by petitioner are of the kind ordinarily
allowable under sec. 162 as ordinary and necessary business expenses to a resident United
States citizen.

salaried employee or on a self-employed basis, for about 25 years. He has been self-employed since 1964, except for a brief period in 1969 when he worked for Environmental Development, Inc. Petitioner's primary line of endeavor is the isolation of organic substances with potential commercial use in pharmaceutical products. This research requires a tropical environment which consideration led to petitioner's becoming a resident of Jamaica, where his research was conducted in 1970.

Petitioner's research activities generated no income from this source in 1970. He had four purposes for keeping his research service operational: (1) To be ready to initiate work for a new client; (2) to be able to collect additional material for all clients; (3) to conduct and publish basic research in techniques of screening for medicinal substances; and (4) to examine new undertakings as alternative sources of income.

Petitioner received income in 1971 as an advance for conducting a scientific tour for college students. This tour was conducted in 1972.

Petitioner incurred the following expenses relating to his research in Jamaica in 1970:

| | |
|---|---|
| Salaries paid | $7,000 |
| Rent paid | 226 |
| Transportation paid | 151 |
| Storage paid | 100 |
| Retirement trust fee | 19 |
| Total | 7,496 |

The $7,000 salary was paid to petitioner's wife for secretarial and "lab" technician services. This income was excluded from petitioner's joint Federal income tax return filed for himself and his wife and appears on Form 2555, Exemption of Income Earned Abroad, filed with that return.

Respondent contends that although petitioner's expenses for biological research activities in 1970 would ordinarily be allowed as deductions under section 162(a) to a resident United States taxpayer, there is an exception in section 911(a) to the allowance of these expenses. Under section 911(a) such expenses are not allowable if they are allocable to income exempt from taxation because the person earning the income is a resident of a foreign country. Respondent correctly states that the place where the work was performed and not where the income was received is determinative of whether gross income is exempt under section

911(a). Moreover, the exemption provisions relating to income earned in a foreign country are mandatory and not elective. See Rev. Rul. 72–526, 1972–2 C.B. 450. Respondent points out that if petitioner had received income from his 1970 research activities in Jamaica, it would have been exempt income. Thus, respondent argues that since expenses incurred in earning exempt income are not deductible (no matter how small the income), it would not be rational to permit petitioner to deduct such expenses merely because he was not fortunate enough to earn any income in 1970. Respondent asserts that petitioner's expenses are "allocable" to his *attempt* to earn income, and should therefore be nondeductible under section 911(a).

Petitioner, on the other hand, contends that the specific language of section 911(a) provides for disallowance of only those deductions "properly allocable to or chargeable against amounts *excluded* from gross income under this subsection." (Emphasis added.) Thus, he argues that section 911(a) clearly has two prerequisites for disallowance of any deductions thereunder: (1) The presence of income which is, in fact, *excluded* under section 911, and (2) deductions which are properly allocable to or chargeable against such *excluded* income. He urges that neither prerequisite is met here. He earned no income which was *excluded* from taxation in 1970, and his expenses cannot be allocated to any such income. He points out that respondent's emphasis upon petitioner's *attempt* to earn income simply does not supply the missing statutory requirement of section 911(a) that actual amounts be so "excluded from gross income under this subsection."

Petitioner asserts that his research expenses in 1970 are allocable to and deductible in his continuing trade or business of biological research.[3] He distinguishes his situation, where no income was earned, from those where some income was earned and excluded under section 911(a). See and compare *Anne Moen Bullitt Brewster*, 55 T.C. 251 (1970), affd. 473 F. 2d 160 (C.A. D.C. 1972); *Frieda Hempel*, 6 T.C.M. 743 (1947). And we are not confronted with an expense so closely related to subsequently earned and excluded income that the expense must be disallowed

---

[3] We agree with petitioner that the income he received in 1971 as an advance for conducting a college student tour in 1972 was earned in a separate trade or business from his biological research.

under section 911(a). See *Hartung v. Commissioner*, 484 F. 2d 953 (C.A. 9, 1973), reversing 55 T.C. 1 (1970).

Petitioner urges that respondent's position overlooks the basic reason for the disallowance of deductions allocable to earned income contained in section 911(a). He agrees that, where income is excluded under section 911(a), to allow a deduction of expenses allocable thereto has the effect of allowing a double deduction—once for the expenses deducted and once for the income excluded. He argues, however, that where there is *no* income excluded, because there is no income earned, then there can be no double deduction. Instead, there is only a single deduction—the deduction of expenses incurred in a taxpayer's continuing trade or business. He points out that where Congress has wanted to obtain parity of treatment for losses, where there was no income of like character, it has drafted specific provisions to create such equality. Thus, Congress has provided an offset of long-term capital losses against ordinary income in section 1211(b)(1)(C). It has also defined in section 163(d) conditions for the disallowance of half the interest deduction associated with debt used to finance investments which will later produce capital gain upon their sale or exchange. Both sections achieve equality of tax treatment where there is no current income to which associated expenses may be allocable. By contrast, Congress utilized no such explicit language in section 911(a). Rather, in section 911(a) Congress required the *presence* of excluded income before providing for the nondeductibility of expenses allocable thereto. Petitioner urges us not to read into section 911(a) an additional effect not explicitly intended by Congress, i.e., to deny deductibility of expenses where no income is earned or excluded, especially where there is no possibility of a double deduction accruing from the allowance of such expenses.

In general, under section 911(a), amounts within statutory limits which constitute earned income attributable to services actually rendered by a bona fide resident of a foreign country are excludable from gross income and exempt from taxation. Section 911(b) defines the term "earned income," in part, as wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered.

In relevant part, section 911(a) further provides that:

An individual shall not be allowed, as a deduction from his gross income, any deductions * * * properly allocable to or chargeable against amounts excluded from gross income under this subsection.

Respondent has promulgated section 1.911-2(d)(6), Income Tax Regs., which provides in pertinent part as follows:

(6) *Treatment of deductions.* In any case in which any amount *is excluded* from the gross income of an individual under paragraph (a) or (b) of this section, there shall be disallowed as a deduction any expenses, losses, or other items otherwise deductible * * * properly allocable to or chargeable against the *amount so excluded* from gross income. * * * *However, deductions which are not properly allocable to or chargeable against earned income excluded under paragraph (a) or (b) of this section are deductible in their entirety * * *.* Examples of such items include personal and family medical expenses, real estate taxes on a personal residence, interest on mortgage on personal residence, and charitable deductions. [Emphasis added.]

The parties agree that if petitioner had been a resident United States taxpayer in 1970, he would be entitled to deduct his research expenses as ordinary and necessary business expenses under section 162(a). What we must decide is whether, because petitioner was a resident of Jamaica in 1970, section 911(a) applies to disallow any deduction for his research expenses in that year; or, stated differently, whether the absence of any "earned income" received by petitioner in 1970 makes section 911(a) inapplicable, thus permitting petitioner to deduct his research expenses under the authority of section 162(a).

It has been stipulated that petitioner's wife reported the income she earned for secretarial and "lab" technician services on Form 2555, Exemption of Income Earned Abroad. This form accompanied the joint return she filed with petitioner for 1970. Form 2555, we note, is a separate form to be filed by each taxpayer residing abroad who claims exemption from tax under the exclusion provided for foreign source earned income in section 911(a). Although the issue has not been specifically raised by the parties, it is our view that the reporting of "earned income" received by petitioner's wife, coupled with the business expense deduction claimed by petitioner on their joint return, warrants closer scrutiny.

The earned income reported and excluded by petitioner's wife was $7,000, or most of the $7,496 claimed as business expenses by the petitioner. Neither petitioner nor his wife would be entitled under section 911(a) to deduct any amount claimed if it is in fact "properly allocable to or chargeable against amounts excluded

from gross income under [section 911(a)]." The question arises, then, whether Congress intended to deny as a deduction by one spouse an amount paid to and excluded as compensation received by the other spouse. In other words, is the salary paid to petitioner's wife and deducted by him "properly allocable to or chargeable against" amounts she excluded from gross income?

Respondent's regulations are silent on the subject and we have found no case which has considered this question. However, the legislative history of section 911 indicates that whether a joint return *or* separate returns are filed by married taxpayers, each must qualify individually under section 911(a) in order to exclude amounts up to the statutory limits provided in section 911(c). If both husband and wife are abroad and earn income, separate ceilings will be applied to determine the amount each may exclude under section 911(a) for personal services actually rendered by each. H. Rept. No. 1447, 87th Cong., 2d Sess., pp. A86–A87(1962); S. Rept. No. 1881, 87th Cong., 2d Sess., p. 76 (1962). Spouses will not qualify for separate exclusions where only one receives qualifying "earned income" in 1 year. Only the spouse receiving such "earned income" qualifies for exclusion under section 911(a). We noted in our recent opinion of *Helen Robinson Solano*, 62 T.C. 562, 567 (1974), that there may be situations, as here, where earned income by one spouse may be excluded under section 911(a) while other income (presumably unearned) received by that person's spouse will not qualify for a similar exclusion. The exclusion applies to the *income,* not to the individual taxpayer; thus we have denied a double exclusion for taxpayers in community property States where only one spouse has received foreign source earned income. See *Renoir v. Commissioner*, 321 F. 2d 605 (C.A. 9, 1963), affirming 37 T.C. 1180, 1182 (1962). The effect of separating excludable "earned income" received by married taxpayers residing abroad is also to separate the deductions properly allocable to or chargeable against the production of each's "earned income." Here the deduction claimed and in issue relates solely to the petitioner, who admittedly had no excluded "earned income" in 1970. His wife claimed no such deduction, nor any other, as being allocable to or chargeable against her own separate and distinct excluded "earned income."

We are persuaded by the legislative history of section 911, the statutory language limiting the exclusion thereunder to an

"individual" receiving compensation for "personal" services, the separate reporting requirements embodied in respondent's Form 2555, and the relevant case law in this area regarding attribution of income to a spouse not earning income, that the "earned income" excluded by petitioner's wife in 1970 is in no way attributable to petitioner. Nor does the reporting of "earned income" by petitioner's wife on Form 2555 preclude our separate consideration here of a deduction claimed by petitioner on their joint return which, by agreement of the parties, is potentially allocable *only* to "earned income" he individually might have received in 1970.

Respondent would have us expand the literal language of section 911(a) to prevent allowance of deductions where a taxpayer has no earned income, while petitioner would have us limit the nondeductibility clause contained therein to situations where income is actually earned and therefore clearly excluded by that section. No clear-cut answer to the issue posed can be found in either the legislative history of section 911(a) or judicial interpretations thereunder.

The exclusion of foreign source earned income from taxation was first discussed at hearings held during consideration of the Revenue Act of 1924. The exclusion was finally adopted in 1926, as section 213(b)(14), to encourage American trade abroad by exempting income earned by citizens residing abroad who sold American products. See the discussion in *Helen Robinson Solano*, 62 T.C. 562, 567 (1974). Specific language barring deduction of expenses properly allocable to foreign exempt income was added to section 213(b)(14) in 1926 by the Conference Committee, and was substantially similar to the current deduction language of section 911(a). See 2 Seidman, Legislative History of Federal Income Tax Laws 1938-1861, p. 596 (1938). The relevant congressional hearings, reports, and debates of 1926 contain no legislative comment which explains the intent of the Conference Committee in adding the disallowance-of-deductions clause. Our research indicates, however, that in both 1924 and 1926 Congress gave serious attention to an analogous problem— deductions for interest on debt used to finance purchase of tax-exempt securities. In 1924, and again in 1926, Congress enacted, as then section 214(a)(2), language which prevented deduction of interest incurred to finance the purchase of tax-exempt securities. The problem of double tax benefits was summarized by

Representative Green of Iowa in a discussion of section 214(a)(2), as follows:

a large investor can, if he chooses — and I would not blame him for so choosing — borrow money, take the proceeds and put them into tax-exempt securities, get allowance for the interest that he is paying on the money borrowed, and not be compelled to pay any income tax, of course, on the amount of interest that he receives from the tax-exempt securities. * * *

* * * They are permitted to deduct the interest in making up their net income, but they are not chargeable with any income tax on the interest which they receive from the tax-exempt securities. 65 Cong. Rec. 2428 (1924).

An attempt in 1926 by the House Ways and Means Committee to amend section 214(a)(2), by allowing deduction of debt-related interest where it exceeded income received from exempt securities, was defeated. 2 Seidman, Legislative History of Federal Income Tax Laws 1938–1861, pp. 597–598 (1938). Thus, the nondeductibility of debt-related interest incurred to purchase tax-exempt securities has remained in the law since 1926 and is presently contained at section 265 of the Code.

Both current sections 911(a) and 265 prevent a double tax benefit that would otherwise accrue if a taxpayer could deduct expenses properly allocable to and chargeable against income which is already exempt. We think it is significant that the original predecessors of both sections were considered and enacted by Congress within a 2-year period (1924–26). Moreover, in 1926 Congress, by its defeat of an amendment which would have granted taxpayers a partial interest deduction, reaffirmed its initial decision (in 1924) to prevent a double tax benefit by way of interest deductions to taxpayers receiving exempt *interest* income. Along with the defeat of this amendment, the Conference Committee—without explanation—enacted language in section 213(b)(14) to prevent a similar double tax benefit by way of deductions to nonresident taxpayers receiving exempt *foreign* income. We are persuaded that in both 1924 and again in 1926 the intention of Congress was to deny any deductions for interest or other amounts found to be properly allocable to income previously exempt from taxation — an intent reflected in the explicit language of then sections 213(b)(14) (foreign income) and 214(a)(2) (tax-exempt securities). This intent has continued without any substantial change by subsequent legislative amendments to either section, or their successor provisions. The foreign source earned income exclusion, and the

nondeductibility provision contained therein, has remained in effect as originally enacted through all revenue acts adopted after 1926 and up to the present time.[4] Thus, although presented with many opportunities to change the relevant disallowance-of-deductions language of section 911(a) and its predecessors, Congress has never done so. Instead, each successive revenue act after 1926 has incorporated the initial language without significant change. Sec. 116(a), Revenue Acts of 1928, 1932, 1934, 1936, and 1938; sec. 116(a), I.R.C. 1939; sec. 911(a), I.R.C. 1954. In *Carstairs v. United States*, 75 F. Supp. 683, 685 (E.D. Pa. 1936), the District Court interpreted the deduction language to mean "that when Congress allowed a general exemption on all income earned abroad, it was intended at the same time to take away every other exemption traceable to such income." The court in *Carstairs* first presumed the existence of earned income before finding any intended denial of deductions related thereto. It disallowed deductions for taxes paid by a taxpayer in the United States and Great Britain on income he had earned from foreign sources. The assumption implicit in *Carstairs* was that deductions would be denied *only* where earned income was present — or, in other words, where one exemption was present, another "exemption" would not be allowed. In the years following the *Carstairs* decision, up to the present, Congress has not changed the statutory language denying such "allocable" deductions. This reflects an acceptance by Congress of the interpretation prohibiting double tax benefits found in *Carstairs*. *McDonald v. Commissioner*, 323 U.S. 57 (1944); *Helvering v. Reynolds Co.*, 306 U.S. 110 (1939); see also the discussion in *Whirlpool Corp.*, 61 T.C. 182, 185–186 (1973).

We are convinced that the concern of Congress in denying deductions for amounts allocable to or chargeable against exempt foreign source income has been to prevent a double "exemption" or deduction—once for the income excluded and once for deductions allocable to such income. See the discussion in this regard in *Anne Moen Bullitt Brewster*, 55 T.C. 251, 256 (1970). Subsequent judicial consideration of section 911(a), or its predecessors, reflects this same concern.

[4] The deduction language of present sec. 911(a) contains an exception, not relevant to the instant case, allowing deductions under 911(a) where permitted by sec. 151, relating to personal exemptions.

In *Frieda Hempel*, 6 T.C.M. 743 (1947), this Court denied deductions for expenses incurred while the taxpayer conducted a 6-month opera tour in Europe. The Commissioner contended that the taxpayer's gross receipts of $16.20 during 1938 constituted "earned income" which was excludable as foreign source income under then section 116(a) of the Revenue Act of 1938. The taxpayer argued that her only "earned income" was 20 percent of the net profits of her tour; that her expenses were greater than such income; and thus there were no net profits and no "earned income" against which her expenses of $5,530 were "properly allocable." We found the taxpayer's argument "ingenious," but held against her on the ground that all the income was "earned income" from professional services, and therefore excluded from gross income. We concluded that her expenses of earning such income were properly allocable or chargeable thereto and disallowed her claimed deductions. In other cases dealing with deductions disallowed against foreign income, the courts have held that the existence of earned income prevented the allowance of any deductions properly allocable thereto. *Anne Moen Bullitt Brewster*, 55 T.C. 251 (1970), affd. 473 F. 2d 160, 163 (C.A. D.C. 1972); *Hartung v. Commissioner*, 484 F. 2d 953 (C.A. 9, 1973), reversing 55 T.C. 1 (1970); *Supino v. United States*, 192 F. Supp. 389, 392 (D.N.J. 1961). In *Brewster,* we faced a situation analogous to the "ingenious" argument the taxpayer raised in *Frieda Hempel, supra.* The taxpayer in *Brewster* operated a business abroad at a net loss and asserted that she had no "earned income" to which certain claimed deductions were allocable or chargeable against. She argued that since she had no "earned income," section 911(a) did not apply and she was entitled to deduct her business expenses during the years in issue. This Court disagreed, finding instead that her business abroad produced gross income, part of which was "earned income" attributable to personal services actually rendered by her. Thus, we disallowed under section 911(a) those expenses which were allocable on a pro rata basis to such "earned income." The Court of Appeals, in affirming our decision, noted that other expenses allocable to foreign income from capital, rather than personal services, were available to reduce the tax on income received from sources within the United States. The Court of Appeals also noted, in dicta, that the *Frieda Hempel* case had already "exposed certain incongruities in the statutory

provision [of 911(a)], for that opera singer's large expenses abroad *would have been fully deductible* from U.S. income if only she had not, apparently by happenstance, received a trifling amount of gross income abroad." (Emphasis supplied.) *Brewster v. Commissioner,* 473 F. 2d 160, 163 (C.A.D.C. 1972). In our opinion the *Brewster* case and the others which discuss disallowance of deductions against foreign source earned income reveal a common logic. Each case finds the existence of earned income *before* disallowing deductions allocable thereto.

Accordingly, in view of the literal language of section 911(a), which speaks of income to be "excluded" from gross income, the legislative history which reflects a concern to avoid *double* tax benefits, and the judicial interpretations which we have discussed above, we conclude that the petitioner is entitled to deduct his biological research expenses where (1) there is clearly no "earned income" to which they are allocable or chargeable against, and (2) where there is no possibility of a double tax benefit accruing to petitioner by our allowance of such expenses under the authority of section 162(a). Furthermore, we think the allocation of deductions permitted by Congress, and upheld in *Brewster,* between "earned" and "unearned" foreign income, with the latter being deductible in their entirety, evidences an awareness by Congress that at times deductions will be available to taxpayers (such as petitioner here) residing in foreign countries where such deductions are not traceable to any "earned income."

*Decision will be entered for the petitioner.*