LYNN F. JONES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 9004-78.
United States Tax Court
T.C. Memo 1979-271; 1979 Tax Ct. Memo LEXIS 253; 38 T.C.M. (CCH) 1064; T.C.M. (RIA) 79271; July 23, 1979, Filed James W. Johnson and Kenneth Burford, for the petitioner. Juan F. Vasquez, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioner's 1975 Federal income tax in the amount of $12,038.18. After concessions, the sole issue for decision is whether certain *254 expenses paid by a United States citizen in operating a Mexican farming business were properly disallowed as a deduction because they were allocable to or chargeable against earned income excluded from gross income under section 911, I.R.C. 1954. The case was submitted on a stipulation of facts. Petitioner Lynn F. Jones, an unmarried individual, resided in the state of Texas at the time his petition in this case was filed. Petitioner timely filed his 1975 individual Federal income tax return with the Director of International Operations, Internal Revenue Service, Washington, D.C.
At all times material herein, petitioner was engaged in the farming business in Mexico as an individual proprietor. Petitioner's gross profit, expenses and net profit from his Mexican farming business in the taxable year 1975 (reported on petitioner's Schedule F), were as follows: Gross Profit
$1,132,093.48
Farm expenses ("Mexican
Schedule F expenses")
1,062,295.18
Net Profit $ 69,798.30
On his Schedule F for 1975, petitioner deducted in full against his gross farm profit from Mexico all of his Mexican Schedule F expenses. Petitioner is a citizen of the United States, and *255 he was a bona fide resident of Tamaulipas, Mexico, during the period from January 3, 1974, to and including December 31, 1975. Pursuant to section 911, I.R.C. 1954, petitioner claimed on his 1975 return an exclusion from gross income in the amount of $20,000 of foreign source earned income (representing earned income from his Mexican farm). During the taxable year 1975, both petitioner's personal services and capital were material income-producing factors in his Mexican farm business. Petitioner's earned income (within the meaning of section 911(b)) from sources without the United States during the taxable year 1975 was $20,992, an amount not in excess of 30 percent of the 1975 net profit from the Mexican farming business. The Commissioner determined that $18,763.41 of petitioner's Mexican Schedule F expenses were properly allocable to or chargeable against excluded earned income, and that deduction of such amount was precluded by section 911(a). The Commissioner calculated the disallowance as follows: Excluded income / Gross Receipts = $20,000.00 / 1,132,093.48 =.017666 Total Mexican Schedule F expenses
[as corrected]
[1] $1,062,120.16
Multiplied by applicable percentage x
.017666
Expenses attributable to excluded
income [disallowed pursuant to
section 911(a)] $ 18,763.41
*256 Since petitioner had deducted the full amount of his Mexican expenses, without allocating any portion of them to the $20,000 excluded income, the Commissioner increased petitioner's 1975 taxable income by the foregoing amount of $18,763.41 as disallowed deductions. The issue in this case is whether the Commissioner erred in applying the provisions of section 911[2] to petitioner's Mexican farm income and expenses in 1975.Petitioner argues that when capital is a material income-producing factor, excludable "earned income" for purposes of the section 911 exclusion is a portion of the net income remaining after the Mexican Schedule F expenses have been deducted in full from petitioner's Mexican gross income. According to this theory, since the Mexican Schedule F expenses *257 must be deducted in order to arrive at "earned income", they are not subject to disallowance as "deductions * * * properly allocable to or chargeable against amounts excluded from gross income" within the intendment of section 911(a). The Commissioner, on the other hand, would require petitioner to exclude a portion of his gross Mexican farm income without reduction by any deductions, and would disallow a fraction of petitioner's Mexican Schedule F deductions on the ground that they are nondeductible expenses allocable to excluded income. The Commissioner's disallowance is computed in accordance with the following formula: *258 Excludable earned income (section 911) / Mexican gross income X Total Mexican Schedule F farm expenses We hold for the Commissioner. In the case of individuals who derive foreign source earned income from sources other than partnerships, it has been established that the section 911 earned income exclusion is an exclusion of an amount taken from gross income, rather than from net income, and that a fraction of the deductibel expenses properly allocable to excluded gross income must be disallowed pursuant to section 911(a). See Cook v. United States,     F. 2d     (Ct. Cl. April 18, 1979); Brewster v. Commissioner,67 T.C. 352 (1976), affd. per curiam     F. 2d     (D.C. Cir. June 1, 1979); Brewster v. Commissioner,55 T.C. 251 (1970), affd. per curiam 473 F. 2d 160 (D.C. Cir. 1972); sec. 1.911-2(d)(6), Income Tax Regs.; Rev. Rul. 75-86, 1975-1 C.B. 242. [3] See also Cornman v. Commissioner,63 T.C. 653 (1975). This rule applies to taxpayers in whose businesses capital is a material income-producing factor. See Brewster v. Commissioner,supra,67 T.C. 352; Brewster v. Commissioner,supra,55 T.C. 251. *259 [4] A formula similar to that applied here has been approved as an appropriate method of ascertaining the amount of deductions allocable to excluded gross income. See Cook v. Commissioner,supra at    , Appendix A, n. 3; Brewster v. Commissioner,supra,67 T.C. at 365-367. [5]
Under Cook and the Brewster cases, petitioner's argument must be rejected. Deduction of the full amount of petitioner's Mexican Schedule F expenses from Mexican gross farming income is not authorized as part of the calculation of excludable "earned income", and contravenes the specific prohibition of section 911(a) against deducting the costs *260 of earning excluded income. The Commissioner correctly disallowed a fraction of petitioner's Mexican Schedule F expenses allocable to the production of the excluded gross farming income. We reach our conclusion notwithstanding the fact that there is authority suggesting that the section 911 earned income exclusion for partners is based on distributive partnership net income and is calculated in a manner similar to that utilized by petitioner in this case. See Vogt v. United States,210 Ct. Cl. 246, 537 F. 2d 405 (1976). The method of applying section 911 to individuals with earned income from partnerships turns on considerations peculiar to partnerships and has been regarded as having no bearing in cases not involving partnership income. See Cook v. Commissioner,supra at    , Brewster v. Commissioner,supra,67 T.C. at 358 n. 7, and Brewster v. Commissioner,supra,     F. 2d at     n. 4. Indeed, the opinion of the Court of Claims in Cook which distinguished the Vogt partnership case, upon which petitioner relies, was written by the same judge who had written the opinion in the Vogt case itself. *261 Petitioner attempts to distinguish the Brewster cases on the ground that they involved a farming business in which capital was a material income-producing factor that operated at a loss, whereas his business operated at a profit. Petitioner argues that the income of a profitable service-capital business is subject to the 30-percent rule of section 911(b), limiting the allowance for "earned income" to an amount not in excess of 30 percent of the net income of the business. This, claims petitioner, demonstrates that "earned income" is a net income concept for purposes of the section 911(a) exclusion. We disagree. The purpose of the 30-percent rule set forth in section 911(b) is not to define earned income, but rather to place a maximum limitation on the amount of excludable gross income from a profitable service-capital business: This [sec. 911(b)] limitation, placing a ceiling on the amount excluded from gross income when there are net profits, reduces the administrative difficulties inherent in determining a reasonable allowance for personal services in businesses, such as merchandising and farming, where both personal services and capital are material income-producing *262 factors. Generally speaking, the percentage limitation operates, and was intended to operate, so as to break benefits to taxpayers. There is utility in such a limitation when there are profits and the taxpayer has a motivation to maximize the amount of earned income abroad. That the limitation may work a strange result when the net income is small, does not undercut the basic approach of the section under which "earned income" is a concept based on gross income and not net income. (Emphasis added.) Brewster v. Commissioner,supra, 473 F. 2d at 163 (footnote omitted). It is apparent from this quotation that "earned income" is based on gross income when a taxpayer's business earns a net profit. In Alexander v. Commissioner,37 T.C.M. 1849-75, 47 P-H Memo. T.C. par. 78,487 (1978), we applied the Brewster interpretation of earned income where a taxpayer's business (in which capital was a material income-producing factor) operated at a net profit. The same result obtains here. Petitioner cites Rousku v. Commissioner,56 T.C. 548 (1971), Robida v. Commissioner,29 T.C.M. 407, 39 P-H Memo. T.C. par. 70,086 (1970), *263 affd. 460 F. 2d 1172 (9th Cir. 1972), and Miller v. Commissioner,51 T.C. 755 (1969), but these cases provide no support for his position. In Rousku v. Commissioner,supra, the Court did not consider whether the section 911 exclusion was based on net income or gross income, or whether a portion of the taxpayer's deductions should be disallowed because they were allocable to excluded earned income; those issues apparently were not raised by the Commissioner.In Robida v. Commissioner,supra, the only issue was whether any part of certain amounts received constituted earned income. The 30-percent limitation of section 911(b) was not in controversy. Miller v. Commissioner,supra, is also distinguishable. That case construed the term "earned income" for purposes of computing the section 37 retirement income credit which in turn made reference to the definition of "earned income" in section 911(b). The problem of statutory construction in Miller was different from that which we face in this case. We must harmonize section 911(a), which speaks in terms of an exclusion from "gross" income *264 and requires the disallowance of deductions allocable to excluded gross income, with section 911(b). [6] And, in accordance with cases decided since that time, it is clear that in Miller,section 911(a) was not relevant to the problem there at hand. See Brewster v. Commissioner,supra,55 T.C. at 254; Howe v. Commissioner,35 T.C.M. 543, 546-547, 45 P-H Memo. T.C. par. 76,119 (1976). [7]
*265 Accordingly, Decision will be entered for the respondent.
Footnotes
1. The petitioner concedes the correctness of the Commissioner's determination that petitioner's depreciation deduction for 1975 relating to his Mexican farm business (deductible as a Mexican Schedule F expense) is $26,092.73, rather than $26,267.75 as claimed on petitioner's 1975 return. Accordingly, petitioner's Mexican Schedule F expenses have been decreased by $175.02 for purposes of the above calculation.↩
2. Section 911, I.R.C. 1954, as in effect in 1973 and 1974, provides in pertinent part: SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule.--The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Bona fide resident of foreign country.--In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c). * * *
An individual shall not be allowed, as a deduction from his gross income, any deductions (other than those allowed by section 151, relating to personal exemptions) properly allocable to or chargeable against amounts excluded from gross income under this subsection. (b) Definition of Earned Income.--For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered. * * * In the case of a taxpayer engaged in a trade or business in which both personal services and capial are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. (c) Special Rules.--For purposes of computing the amout excludable under subsection (a(, the following rules shall apply: (1) Limitations on amount of exclusion.--The amount excluded from the gross income of an individual under subsection (a) for any taxable year shall not exceed an amount which shall be computed on a daily basis at an annual rate of-- (A) except as provided in subparagraph (B), $20,000, in the case of an individual who qualifies under subsection (a), or (B) $25,000 in the case of an individual who qualifies under subsection (a)(1), but only with respect to that portion of such taxable year occurring after such individual has been a bona fide resident of a foreign country or countries for an uninterrupted period of 3 consecutive years.↩
3. See Hernandez v. Commissioner,T.C. Memo. 1979-272 (released on this date); Alexander v. Commissioner,37 T.C.M. 1849-75, 1849-80, 47 P-H Memo. T.C. par. 78,487 (1978); Quinn v. Commissioner,33 T.C.M. 310, 313, 43 P-H Memo. T.C. par. 74,064 (1974); Hempel v. Commissioner,6 T.C.M. 743↩, 751-752, 16 P-H Memo. T.C. par. 47,183 (1947). 4. See Alexander v. Commissioner,supra.↩
5. See Alexander v. Commissioner,supra.↩
6. If petitioner's construction of section 911 were adopted we would be confronted with the extraordinary situation whereby he would be allowed to exclude from gross income the full $20,000 of foreign income permitted by section 911(a) and (c)(1)(A) while at the same time would not be subject to the specific statutory condition of section 911(a)↩ that he should "not be allowed, as a deduction from his gross income, any deductions * * * properly allocable to or chargeable against amounts excluded from gross income under this subsection." In short, the requirement that an allocable part of the foreign expenses be disallowed would become a dead letter. 7. Petitioner's reliance on sections 1348 (as in effect prior to the Tax Reform Act of 1976, P.L. 94-455, 90 Stat. 1520) and 401(c) of the Code is misplaced for similar reasons. Those sections do not provide a helpful analogy because they lack provisions comparable to section 911(a) and were enacted to serve purposes different from section 911↩.