Daniel A. Robida v. Commissioner.
Robida v. Commissioner
Docket No. 4861-62.
United States Tax Court
T.C. Memo 1970-86; 1970 Tax Ct. Memo LEXIS 274; 29 T.C.M. (CCH) 407; T.C.M. (RIA) 70086; April 15, 1970, Filed *274 Held: Income derived from taxpayer's manipulation of slot machines located abroad constitutes "earned income" within the meaning of section 911(b), I.R.C. 1954, and is excludable from gross income and exempt from taxation under section 911(a)(2), the other facts necessary to qualify this income for exclusion under section 911(a)(2), being shown. John R. Swendsen, for the petitioner. Eugene H. Ciranni, for the respondent. TIETJENS
Supplemental Memorandum Findings of Fact and Opinion TIETJENS, Judge: This case is here on remand from the Court of Appeals, Ninth Circuit. Robida v. Commissioner, 371 F. 2d 518 (C.A. 9, 1967). Vacating the decision of this Court, the Court of Appeals directed that further proceedings be entertained by this Court: Here we have a petition to review an unreported decision of the Tax Court. The respondent resists the contentions made in the petition, but, at the same time, he moves that we, "in the interest of complete fairness," remand the case to the Tax Court for further, but limited, proceedings. *276 Involved are claimed income tax deficiencies for the years 1956 through 1961. There is no dispute over the fact that petitioner derived the income upon which the deficiencies were assessed through his ability to "manipulate" slot machines located in military service clubs, principally in Germany. The petitioner, undertaking to represent himself, was unsuccessful in his presentation of a Petition for Refund in the Tax Court. The primary issue was petitioner's claim that the revenue, reported by petitioner in his tax returns for the years in question, was exempt under section 911 of the Internal Revenue Code of 1954. In 1963 petitioner was taken into custody by German police and expelled from Germany. At the time of the arrest the German authorities seized certain of petitioner's personal records, including diaries, without the restoration of which, claims petitioner, he is unable to recall and explain facts which would operate to his favor in the resolution of his controversy with the Revenue Service. The respondent admits that the Revenue Service, through other agencies of the United States, obtained a portion of petitioner's records from the German police. *277 These records were not made available to petitioner prior to the hearing in the Tax Court. It is because of this that the respondent has moved for remand. It is conceded that petitioner should have been given the opportunity to examine and make use of such of his records as the Revenue Service actually has. The petitioner is not satisfied with this. He urges that the Revenue Service did not obtain all of the records which are of significant materiality to his contentions and that, since the Revenue Service was able to recover a part of his records, it can present no acceptable explanation as to why it did not obtain all of them. Upon this premise he contends that the decision of the Tax Court should be vacated and that a final decision should be issued in his favor. When the deficiencies, including penalties, were first assessed, the notice of liability recited a determination of fraud and the alleged failure of petitioner to file returns for the years in question. It was not until the time of the hearing in the Tax Court that the respondent abandoned the issue of fraud and the mistaken claim that returns for the years in question had not been filed. Petitioner urges that he was *278 thereby lulled into failure properly to inject the issue of whether respondent's claims were barred by applicable statutes of limitations. Under the whole circumstances of the case, some of which we have reviewed, we conclude that respondent's motion for remand should be granted. We believe, however, that there should not be a sharp limitation upon further proceedings. It will be appropriate for petitioner to engage in discovery proceedings to the end that he may obtain all of his necessary personal records or that the respondent may attempt to make a satisfactory showing as to why records not in its possession, if such records exist, have not been obtained or cannot be obtained. The petitioner should have the opportunity to assert all defenses which may be available to him, including the applicability of the statutes of limitations. The Tax Court should make a redetermination upon the basis of such proper evidence as has already been produced plus such additional evidence as either of the parties may choose to offer. 408 The Commissioner determined the following deficiencies in income tax of the petitioner and additions to tax under sections 6653(b) and 6654 of the Internal Revenue Code *279 of 1954: [1]
Year
Deficiency
Addition to Tax Under Sec. 6653(b)
Addition to tax Under Sec. 6654
1956
$ 7,235.68
$3,617.84
$202.60
1957
3,718.44
1,859.22
104.12
1958
3,583.28
1,791.64
100.33
1959
9,888.97
4,944.49
276.89
1960
13,381.91
6,690.96
374.69
1961
8,751.27
4,375.64
245.03
The assertion of additions to tax under section 6653(b) has been abandoned by the Commissioner. The Commissioner has conceded that the assessment of taxes for the year 1958 is barred by the limitations provisions of section 6501. The issues left for decision are: (1) What part of petitioner's income, if any, in these years was not includable in gross income and so exempt from taxation under the provisions of section 911, Internal Revenue Code of 1954? (2) Is the assessment of taxes for any of the years in which we find there are deficiencies, barred by the limitations provisions of section 6501? (3) Has petitioner been given an opportunity to examine and make use of such of his records as the Commissioner either actually has *280 or upon which he relied in his determination of the deficiencies in income tax and additions to tax? Has the Commissioner obtained all of the records which are of significant materiality to his contentions? If not, has the Commissioner made a satisfactory showing as to why records not in his possession, if such records exist, have not been obtained or cannot be obtained? Findings of Fact We find as facts and incorporate herein by this reference our original findings of fact as reported in our original Memorandum Opinion in this case, except our finding that "The evidence does not show that petitioner received any wages, salaries or professional fees or other amounts as compensation for personal services actually rendered during the years in question from sources without the United States." We also make the following additional findings of fact. In the proceedings before us on remand, no evidence has been introduced which persuades us of any error in the Commissioner's net worth computation as set forth in our original findings of fact. Petitioner reported the following amounts of adjusted gross income, excluding the reported "foreign income," on his returns for the indicated *281 years: Year
Reported Adjusted Gross Income
1956
$2,628.00
1957
2,883.00
1959
4,945.93
1960
6,511.53
1961
7,687.00
The Commissioner determined "Adjusted Gross Income" on the basis of his net worth statement as follows: Year
Adjusted Gross Income
1956
$21,828.12
1957
14,683.69
1959
26,426.97
1960
32,196.21
1961
24,576.96
The difference between "Adjusted Gross Income" as determined by the Commissioner and petitioner's reported adjusted gross income (excluding amounts reported as "foreign income") constitutes the actual amounts of petitioner's foreign income: Year
Foreign Income
1956
$19,200.12
1957
11,800.69
1959
21,481.04
1960
25,684.68
1961
16,889.96
At the time of the original trial in this case, in October 1964, the Commissioner did not have in his possession or custody any original records of petitioner. Prior to the original trial the Commissioner did have in his possession photostatic copies of diaries and correspondence of petitioner. On several occasions prior to the original trial of this case, the Commissioner allowed petitioner to examine photostatic copies of his diaries. On those *282 occasions petitioner 409 copied material from the photostats. Petitioner was advised, prior to the original trial, that he could examine the photostats in the Commissioner's possession at any time within reasonable working hours. Petitioner has never acknowledged that the photostatic copies of his records in the Commissioner's possession are accurate. Prior to the original trial of this case, the Commissioner suggested to petitioner that he stipulate to the authenticity of the copies of his records and admit them into evidence. Petitioner refused to do so. Since the copies of his records were not properly authenticated and since petitioner refused to stipulate to their accuracy, the copies of petitioner's records were not introduced into evidence. After the original trial of this case, and before the order of remand, in May 1966, the Commissioner obtained from the German authorities the original five diaries of petitioner. On February 17, 1967, within a month after the order of remand in this case, the Commissioner initiated procedures to obtain all the rest of petitioner's records from the German authorities. This was done pursuant to the order of remand. As a result of *283 this request, the Commissioner learned that all of the rest of petitioner's records which had been seized by the German police would be made available to petitioner. The German police authorities stated that they preferred to make the records available through the Commissioner by means of a power of attorney, but they also stated they were prepared to turn them over directly to petitioner. By letter dated April 17, 1967, the Commissioner advised petitioner's attorney, John R. Swendsen (Swendsen), that he could obtain all petitioner's records except the diaries which were in the Commissioner's office, from the German police provided that petitioner execute a power of attorney authorizing the Commissioner to receive them on his behalf. Swendsen informed the Commissioner that petitioner preferred to obtain his records from Germany directly. The Commissioner made further inquiries as to the manner in which petitioner might obtain his records. As a result of these inquiries the Commissioner informed Swendsen that petitioner might obtain all of his records by writing directly to: State's Attorney's Office Wiesbaden, Germany
Attention: Staatsanwalt Joachim Sonntag In the meantime, *284 the Commissioner, on several occasions, advised petitioner's counsel that the original diaries were in San Francisco and offered him an opportunity to examine them. On one such occasion, on April 10, 1967, petitioner's counsel expressed his appreciation to the Commissioner for offering to make whatever records the Government possessed or could obtain available to him. However, he rejected the offer to examine the records at that time and stated he would delay until some later date to examine them. Because petitioner's counsel wished to obtain petitioner's records directly, rather than through the Commissioner's representatives via a power of attorney, it became necessary to return the five original diaries to Germany. They had been obtained from the German police on a loan basis only, and a receipt for them had been given to the German police. They were returned to the German police on June 22, 1967. The Commissioner has provided petitioner with copies of all of the original records of petitioner which it has ever possessed, namely, the five diaries and has also provided petitioner with copies of all of the copies of petitioner's records which it has ever possessed, namely, copies *285 of correspondence between petitioner and certain financial institutions and copies of correspondence between petitioner and others of a personal nature. Every original record of petitioner, and every copy of a record of petitioner, which the Commissioner has possessed has been made available to petitioner. In addition, the Commissioner contacted the German police authorities and established procedures by which petitioner was enabled, or should have been enabled, to obtain all of the rest of his records. Part of petitioner's records were returned to him by the German police on the day he was released from prison and additional records were returned to him three months later. A large part of petitioner's records were never seized by the German police, since they were stored at the homes of friends of petitioner in various cities throughout Europe. Petitioner has failed to specify the nature of the records seized by the German police which have not been returned to him. Opinion The Commissioner determined the deficiencies in income tax on the basis of his net worth statement for the stated 410 reason that petitioner did not file returns for these years. In fact, petitioner did *286 file returns for each of the years in issue. These returns accurately disclose all of petitioner's income except the amounts of "foreign income" he derived from his manipulation of slot machines. The actual amounts of petitioner's "foreign income" we find to be the difference between the amounts of "Adjusted Gross Income" of the Commissioner's net worth statement and the amounts of income (other than "foreign income") reported by petitioner on his returns. The central issue in this case, then, is whether any amount of petitioner's "foreign income," so arrived at, is excludable from his gross income and exempt from taxation under section 911(a). Section 911(a)(2) provides that in the case of an individual citizen of the United States, who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or an agency thereof), if such amounts constitute "earned income" attributable to such period, shall not be included in gross *287 income and shall be exempt from taxation. For the purposes of section 911 "earned income" means "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered." Section 911(b). The petitioner claims as exempt the amounts reported on his returns as "foreign income." Petitioner derived this income from the manipulation of slot machines located in various service clubs abroad, principally in Germany. The income was derived principally, if not exclusively, as a result of petitioner's substantial expenditure of time and effort, which included locating the machines, traveling to the various service clubs in numerous countries where these machines were located, gaining admission to such clubs, and "playing" or "working" the machines which he could "beat." During the years 1956 through 1961 petitioner gained admission to approximately 500 service clubs in various countries of Europe and Northern Africa, visiting numerous countries during the same year. Petitioner often "worked" seven days a week and frequently "worked" late in the evenings "playing" the machines. Petitioner usually gained admission to the service clubs as a guest *288 of a member or other person entitled to admission, in which case he frequently agreed with his hosts to split the "take." We are not persuaded that petitioner was engaged in "teaching" these persons how to manipulate slot machines or that he received any compensation for such alleged services. Rather, it appears petitioner entered into these arrangements for the purpose of gaining admission to the clubs. In our original opinion we characterized the arrangement as a "joint venture." However the arrangement may be characterized, we think it is clear that petitioner did not receive compensation for personal services actually rendered to such persons. We did not consider, however, the further question whether income derived from manipulating machines itself might properly be considered "earned income" within the meaning of section 911(b). "Earned income," we observe again, means "amounts received as compensation for personal services actually rendered." On brief the Commissioner states that "the evidence clearly establishes that all of petitioner's foreign income was derived from his personal manipulation of the machines." We think this is a fair statement of the facts. The Commissioner *289 then concludes: Income derived from personal manipulation of slot machines constitutes gambling income which is not exempt from United States taxation. Section 911 excludes only "earned income" from United States taxation and gambling income does not constitute "earned income." Whether or not income derived from the manipulation of slot machines constitutes "earned income" within the meaning of section 911 is a question of interpretation of the statute so as to effectuate the intent of Congress. While many foreign countries levy their full individual income tax only on residents and do not tax nonresident citizens except on income deemed to be from sources within their boundaries, the United States has always made citizenship a sufficient basis for imposing the income tax on an individual and for defining his gross income to include "income from whatever source derived." In 1926, this policy was modified by the enactment of section 911. Congress apparently felt that United States citizens were at a disadvantage working in foreign 411 countries in competition with others who were foreign to that country and whose country of citizenship imposed its income tax only on the basis *290 of residence. Hearings on the Revenue Act of 1926 Before the House Committee on Ways and Means, 69th Cong., 1st Sess. 182-183 (1925); S. Rept. No. 781, 82d Cong., 1st Sess. 52-53 (1951). It was also believed that there were hardships in working and living abroad and that in order to encourage United States citizens to participate in foreign trade these hardships should be offset by special tax relief. Hearings on the Revenue Act of 1926, supra, 182-183. Section 911(b) originally served the dual function of providing a definition for the earned income credit enacted as section 209 of the Revenue Act of 1924, 43 Stat. 263-64, and for the exclusion from gross income for foreign residence. The legislative history behind the definition of "earned income" clearly indicates that the distinction between "earned income" and other types of income is essentially a distinction between income derived from the taxpayer's personal expenditure of time, energy and skill, and income derived from the use of his property. H. Rept. No. 179, 68th Cong., 1st Sess. 5-6 (1924). In other words, we think the requirement that the excludable income be "earned income" was designed merely to prevent the exclusion *291 of passive income, such as rental income, interest, dividends, etc. We think it clear that petitioner's foreign income was "earned income" in the sense that it was derived exclusively from his personal expenditure of time, energy and skill. Gambling income could in many circumstances be passive income, which like rental income, dividends, interest, royalties, etc., could fairly be characterized as being derived from the use of property or the investment in gambling facilities. No stated Congressional purpose would be served by encouraging the passive or casual gambler to pursue his gambling abroad rather than at home, any more than by encouraging the investor to clip his coupons on the Riviera rather than at Palm Beach. We do not, however, think that petitioner's income derived from his manipulation of slot machines necessarily constitutes gambling income. Petitioner did not "win" his income on his stake. Rather he earned his income by his diligent application of an unusual skill or knowledge gained during his previous employment with a manufacturer of slot machines which enabled him to extract money from these machines wherever he could find them. No amount of his income was derived *292 from the use of his capital. The Commissioner characterizes petitioner's occupation as a "disreputable kind of business." The obvious implication is that Congress never intended to encourage petitioner to engage in a disreputable business. Of course, we would never suggest otherwise. We refuse, however, to impose a limitation on the availability of the exemption where the statute provides none. Accordingly, we hold petitioner is entitled to exclude his "foreign income" under section 911(a)(2), subject to the $20,000 limitation provided by section 911(c). Because of this holding, we find there are no deficiencies in tax and no additions to tax for the years 1956 and 1957. Accordingly, we need not consider the question whether those years are "open" for the purpose of the statute of limitations. The years 1959 through 1961 are "open" because the assessment of taxes for these years was made within the three year period provided for by section 6501(a). Petitioner is liable for the addition to tax for the years 1959 through 1961 provided by section 6654(a) for his failure to pay estimated income tax. We hold that the Commissioner has in all respects complied with the mandate of *293 the Court of Appeals. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩