EVERITT W. and PATRICIA M. HOWE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Howe v. Commissioner
Docket No. 4626-75.
United States Tax Court
T.C. Memo 1976-119; 1976 Tax Ct. Memo LEXIS 286; 35 T.C.M. (CCH) 543; T.C.M. (RIA) 760119; April 19, 1976, Filed Everitt W. Howe, pro se. Stuart B. Kalb, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1971 and 1972 in the amounts of $174.90 and $219.89, respectively. Two minor issues having been conceded by petitioners, there remains for our decision only whether, in computing petitioners' retirement income credit under section 37, I.R.C. 1954, [1] the amount of earned income from self-employment as a salesman, which is required by section 37(d)(2)(A) to be subtracted from retirement income, is the gross receipts from commissions or net profits from self-employment. All of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided at Cocoa Beach, Florida at the time of the filing of their petition in this case, filed joint Federal income tax returns for the calendar years 1971 and 1972 with the Office of the Director, Internal Revenue Service Center, Southeast *288 Region, Atlanta, Georgia. Neither petitioner had attained the age of 72 at December 31, 1972. Everitt W. Howe (hereinafter referred to as petitioner) was, during the years 1971 and 1972, a retired United States Air Force officer. During these years he received retirement annuity income of $10,659.49 and $11,114.76, respectively, from the United States Air Force. During each of the years 1971 and 1972 petitioner was a self-employed sales agent for several printing and specialty firms. He customarily would take orders from customers for sales of printing and advertising specialties and then place such orders with the supplier. Capital was not a material income-producing factor in his business. Generally the suppliers billed petitioner's customers directly and when they collected from those customers sent petitioner a check representing his commission on the sale. In those instances where petitioner collected from the customers he would withhold the amount of his commission from the sales proceeds and remit the balance to the supplier. Petitioner reported the following income and expenses with respect to his business as a self-employed sales agent on Schedule "C" on his returns *289 for each of the years 1971 and 1972: 1971
1972
Gross Receipts
$2,066
$3,750.78
Less: Cost of Goods
Sold
0
0
Gross Profit
$2,066
$3,750.78
Less: Operating
Expenses *
3,343
3,707.70
Net Profit or (Loss)
($1,277)
$ 43.08
Petitioners, on their income tax returns for 1971 and 1972, claimed a retirement income credit for each year of $228.60 which they computed by considering petitioner's earned income to be the net profit or loss from his business as a self-employed sales agent. Petitioners, on Schedule R-- Retirement Income Credit Computation of their 1971 return, entered on Line 2(b)(1) "If you are under 62, enter amount in excess of $900" the figure "0". Respondent, in his notice of deficiency, disallowed $174.90 of the amount claimed by petitioners as retirement income credit for 1971 and disallowed the entire $228.60 claimed by petitioners for 1972 on the basis that earned income as used in the computation of retirement income available for the retirement income credit should be measured by reference to petitioner's gross profits unreduced by the operating expenses *290 of his business. Sections 37(a) and 37(b) provide that an individual who has received in each of the 10 calendar years preceding the taxable year earned income in excess of $600 shall be allowed a credit against his tax of 15 percent of the amount he received as retirement income as defined in subsections (c) and (d). Subsection (c) defines retirement income for an individual who has not attained the age of 65 before the close of the taxable year as income from pensions and annuities under a public retirement system as defined in subsection (f). Although it is not specifically stipulated in this case, the inference is that petitioner was under 62 years of age at the end of 1972. Under the provisions of section 37(f) petitioner's annuity from the United States Air Force is income from a public retirement system and therefore petitioner's retirement income in each of the years here in issue is the amount of his Air Force pension limited as provided in Section 37(d). Section 37(d)[2] provides that the amount of retirement income shall not exceed $1,524 less any amount received as a pension or annuity under the Social Security Act, the Railroad Retirement Act, or an annuity otherwise *291 excluded from gross income, and in the case of an individual who has not attained age 62 before the close of the taxable year, any amount of earned income, as defined in subsection (g), in excess of $900 received during such taxable year.Subsection (g) of section 37[3] provides that for the purpose of subsection (d)(2) of section 37 the term "earned income" has the meaning assigned to that term in section 911(b) except that the term does not include any amount received as a pension or annuity. *292 The record here clearly indicates, and respondent does not contend to the contrary, that petitioner received earned income in each of 10 calendar years preceding the year 1971. The record also shows that petitioner received no amount under the Social Security Act, the Railroad Retirement Act or from an otherwise excluded annuity. Therefore, since petitioner had annuity income from a public retirement system, he is entitled to the retirement income credit to the extent allowable under the limitation of section 37(d)(2). It is likewise clear from the record that if petitioner's earned income as defined in section 37(g) is the net profit from his self-employment as a salesman, he did not have in excess of $900 earned income in either of the years here in issue. However, if his gross receipts or gross profits from commissions are to be considered as his earned income, then he would have in excess of $900 earned income in each of the years here in issue. Section 911 deals with earned income from sources without the United States and provides under the circumstances therein stated for an exclusion from the taxable income of an individual of such earned income. Earned income, as defined *293 in section 911(b) [4] means "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered." This section further provides that in the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, a reasonable allowance as compensation for personal services by the taxpayer, not in excess of 30 percent of his share of the net profit of such trade or business, shall be considered as earned income. This section contains no precise definition of what is to be considered as earned income in the case of a taxpayer engaged in a trade or business in which capital is not a material income-producing factor, which is the situation in the instant case. *294 Section 911(a), in providing for the exclusion from gross income of earned income from sources without the United States, specifically provides that an individual shall not be allowed as a deduction from his gross income any deductions (other than the personal exemptions allowed by section 151) properly allocable to or chargeable against amounts excluded from gross income under section 911(a). Therefore, ordinarily in the case of an individual who had foreign-earned income from a trade or business in which capital was not a material income-producing factor it would be of no consequence whether gross profits from the foreign business were excluded and the deduction allocated to those gross profits not allowed or only net profits were excluded except in the case where a loss was sustained by the individual in the conduct of his trade or business outside the United States. However, as is obvious from the instant case, in determining the earned income reductions under section 37(d)(2)(A), there usually will be a greater retirement income credit if the net profit from a trade or business is considered to be "earned income" instead of the gross profit. Section 1.37-2(a) of respondent's *295 regulations [5] provides that for the purpose of section 37(d)(2) earned income means "the entire amount of such income and shall not be reduced by any expenses connected with the earning of such income." Respondent argues that this regulation means that the gross profits from a taxpayer's business should be considered as that taxpayer's earned income for the purposes of section 37(d)(2).Respondent states that this interpretation is an appropriate one under section 911(b) since under section 911(a) an individual is not allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under section 911(a).Respondent argues that if an individual is not allowed deductions allocable to amounts excluded from gross income, the amount excluded cannot be the net profits minus the excluded items. He contends that it follows that earned income under section 911(b) from self-employment must be the gross profits and not the net profits. Respondent states that our holding in Anne Moen Bullitt Brewster,55 T.C. 251 (1970), affd. per curiam 473 F. 2d 160 (C.A. D.C. 1971), supports his conclusion *296 that the intent of section 911(b) is that earned income should be measured by gross profit and not by net profit. Respondent then proceeds to trace the origin of the section of the Code which is now section 911(b) and the various rulings and regulations with respect to section 911(b) and its predecessor sections. Respondent states that section 911(b) had its origin in section 213(b)(14) of the Revenue Act of 1926 which section referred to section 209 of that act for the definition of earned income. (Section 209 of the Revenue Act of 1926.) [6] We will assume that respondent is correct in this statement of the origin of section 911(b). However, we do not consider the language of that section to be any more explicit in defining "earned income" from self-employment than is section 911(b). Section 209(a)(2) of the 1926 Act refers to "earned income deductions" properly applicable to or chargeable against "earned income." The applicable deductions depend on whether the starting point is the net or gross profit from self-employment. However, we do note that section 209(c) of the 1926 Act refers to the proper part of "net income" from a share of a partnership which consists of "earned income. *297 " *298 Respondent recognizes that the facts in the instant case are not distinguishable from those in Warren R. Miller, Sr.,51 T.C. 755 (1969), a Courtreviewed case in which we held that earned income of a taxpayer from a real estate brokerage business in which capital was not a material income-producing factor should be determined for the purposes of section 37(d) as consisting of the net profit from the taxpayer's business and not the gross profit. Respondent, however, argues first, that our conclusion in the Miller case is in error as a matter of law and, second, that our holding in the Miller case is inconsistent in our holding in Anne Moen Bullitt Brewster,supra. In the Miller case, we examined the provisions of section 911(b) to determine whether its language was clear and explicit in requiring that gross earnings from self-employment be considered as earned income and concluded that it was not. See 51 T.C. at 761, 762 (Warren R. Miller, Sr.). In a footnote we pointed out that the problem of whether gross or net profit from self-employment constituted earned income did not arise in applying the income-exclusion *299 provisions of section 911(a) since section 911(a)(2) disallows deductions allocable to or chargeable against amounts excluded from gross income under that subsection. We further pointed out that nothing in section 911(b) suggested that in the case of a trade or business in which capital is not a material income-producing factor earned income should consist of gross rather than net profit. Having concluded that section 911(b) did not specifically provide that earned income of a self-employed person consisted of gross profit and discussed the history of the provisions contained in section 1.37-2(a) of respondent's regulation upon which he relied both in the Miller case and in the instant case, we held (at 763) that while "section 1.37-2(a), Income Tax Regs., is consistent with section 37 when applied to wages and salaries--the Social Security Act refers to gross income from wages and salaries--we conclude that it is not intended to, and does not, apply to income derived from self-employment." [7] We follow this holding in the present case. *300 We do not agree with respondent's argument that our holding in Anne Moen Bullitt Brewster,supra, is inconsistent with our holding in Warren R. Miller, Sr. In the Brewster case, we discussed the Miller case, but pointed out that the issue in the Miller case dealt with correlating the provisions of section 37 and section 911(b) and no such issue was involved in the Brewster case. The Brewster case involved whether an individual who operated a farming business in Ireland in which both personal services and capital were material income-producing factors was required to exclude from her income any amount as a reasonable allowance for compensation for personal services rendered by her where the farm expenses exceeded the gross farm income, resulting in net farm losses each year. The problem of statutory interpretation involved in that case was not the same as that involved in the Miller case and the instant case. Because the issue in the instant case is identical to the issue in the Warren R. Miller, Sr. case, we would not have discussed the issue to the extent we have except that respondent, in effect recognizing that we have ruled *301 on the identical issue in the Court-reviewed Miller case, asks us to reconsider and reverse that holding.We see no basis for changing the view we expressed in the Miller case. Respondent apparently overlooks the fact that section 37(d)(2) refers only to section 911(b), not to section 911(a) and (b). If net profits from self-employment, where capital is not a material income-producing factor, are considered as "earned income" under section 911(b), then the expenses used to reduce gross profits to net profits are not "deductions * * * properly allocable to or chargeable against amounts excluded from gross income under this subsection." (Section 911(a)). The inconsistency in our interpretation of section 911(b) in the Miller case, which respondent argues exists because of the provisions of section 911(a), does not in fact exist. Rather our interpretation is consistent with section 911(b) and the reference in the committee reports when section 37 as enacted to a taxpayer being permitted "to earn up to $900 a year * * * in self-employment" without having his retirement income credit reduced, the same test applied in connection with Social Security.(H. Rept. No. *302 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 8 (1954); S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 8 (1954). The word "earn" used in this context, in our view, refers to net profits from self-employment. For the reasons herein stated and the reasons stated in even greater detail in the Warren R. Miller, Sr. case, supra, we hold that petitioner is entitled in each of the years here in issue to a retirement income credit of $228.60. Because of minor adjustments made by respondent, which have been conceded by petitioners, Decision will be entered under Rule 155.* Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
*. All except a nominal amount each year represented automobile expense.↩
2. SEC. 37. RETIREMENT INCOME. (d) Limitation on Retirement Income. --For purposes of subsection (a), the amount of retirement income shall not exceed $1,524 less-- (1) in the case of any individual, any amount received by the individual as a pension or annuity-- (A) under title II of the Social Security Act, (B) under the Railroad Retirement Acts of 1935 or 1937, or (C) otherwise excluded from gross income, and (2) in the case of any individual who has not attained age 72 before the close of the taxable year-- (A) if such individual has not attained age 62 before the close of the taxable year, any amount of earned income (as defined in subsection (g)) in excess of $900 received by such individual in the taxable year, * * * ↩
3. SEC. 37. RETIREMENT INCOME. (g) Earned Income Defined.--For purposes of subsections (b) and (d) (2), the term "earned income" has the meaning assigned to such term in section 911 (b), except that such term does not include any amount received as a pension or annuity.↩
4. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (b) Definition of Earned Income. --For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.↩
5. Section 1.37-2(a), Income Tax Regs., provides as follows: Eligibility for retirement income credit. (a) In order to be eligible for the retirement income credit, section 37(b) provides that the taxpayer must have received earned income in excess of $600 during each of any 10 calendar years preceding the taxable year. Where both spouses have attained the age of 65 and file a joint return for the taxable year, and one spouse meets the earned income requirement of section 37(b), see paragraph (d)(2) of § 1.37-1 for computation of the retirement income credit under the special rules of section 37(i). For purposes of section 37(b) and section 37(d)(2), the term "earned income" has the same meaning as in section 911(b), except that earned income does not include any amount received as a pension or annuity. See section 911(b) and the regulations thereunder. Section 911(b) provides, in general, that earned income includes wages, salaries, professional fees, and other amounts received as compensation for personal services rendered. For the purposes of section 37(b) and section 37(d)(2)↩, earned income means the entire amount of such income and shall not be reduced by any expenses connected with the earning of such income. Also, for such purposes, income earned by either spouse which constitutes community income under community property laws applicable to such income shall be treated as earned income received one-half by each spouse. 6. Sec. 209.(a) For the purposes of this section-- (1) The term "earned income" means wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income producing factors, a reasonable allowance as compensation for the personal services actually rendered by the taxpayer, not in excess of 20 per centum of his share of the net profits of such trade or business, shall be considered as earned income. (2) The term "earned income deductions" means such deductions as are allowed by section 214 for the purpose of computing net income, and are properly allocable to or chargeable against earned income. (3) The term "earned net income" means the excess of the amount of the earned income over the sum of the earned income deductions. If the taxpayer's net income is not more than $5,000, his entire net income shall be considered to be earned net income, and if his net income is more than $5,000, his earned net income shall not be considered to be less than $5,000. In no case shall the earned net income be considered to be more than $20,000. (b) In the case of an individual the tax shall, in addition to the credits provided in section 222, be credited with 25 per centum of the amount of tax which would be payable if his earned net income constituted his entire net income; but in no case shall the credit allowed under this subdivision exceed 25 per centum of his tax under section 210 plus 25 per centum of the tax which would be payable under section 211 if his earned net income constituted his entire net income.
(c) In the case of the members of a partnership the proper part of each share of the net income which consists of earned income shall be determined under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary and shall be separately shown in the return of the partnership and shall be taxed to the member as provided in section 218.↩
7. In Warren R. Miller, Sr.,51 T.C. 755, 760 (1969), we recited the history of the enactment of section 37 as follows: Prior to the enactment of section 37, the Commissioner, in 1941, issued a ruling that retirement benefits under the social security program were nontaxable. I.T. 3447, 1941-1
C.B. 191. Yet pensions under most other publicly administered retirement programs, industrial retirement pensions, and retirement income derived from individual arrangements remained taxable. Section 37 was added to the tax law by the 1954 Code for the express purpose of ending this discrimination by granting persons receiving taxable retirement income a tax credit roughly equivalent in value to the tax exemption of social security benefits.Pertinent to our problem in this case, an individual was permitted by section 37 "to earn up to $900 a year as an employee or in self-employment without affecting the amount of the retirement credit"; this earnings limitation was intended to be substantially "the same test of retirement as that adopted for social-security purposes." H.Rept.No. 1337, to accompany H.R. 8300 (Pub.L. 591), 83d Cong., 2d Sess., p. 8 (1954); S.Rept.No. 1622, to accompany H.R. 8300 (Pub.L. 591), 83d Cong., 2d Sess., p. 8 (1954). Under both statutes the test of retirement is keyed to the amount of an individual's earnings apart from retirement benefits. In applying the retirement test, the Social Security Act differentiates between wages and earnings from self-employment. Gross earnings from wages in excess of the statutory amount preclude retired status for social security benefit purposes, but only net↩ excess earnings from self-employment will affect the benefits of an otherwise eligible social security retiree. [Footnotes omitted.]