**AMERICAN POTASH & CHEMICAL CORPORATION**

v.

**The UNITED STATES.**

**No. 176–66.**

United States Court of Claims.

Nov. 15, 1968.

Karl R. Price, Washington, D. C., for plaintiff; Joseph E. McAndrews, and Ivins, Phillips & Barker, Washington, D. C., of counsel.

William C. Ballard, Jr., Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

LARAMORE, Judge.

This case is before the court on Defendant's Petition for Reconsideration of our decision issued July 17, 1968 (American Potash & Chemical Corp. v. United States, Ct.Cl., 399 F.2d 194), in which we denied defendant's motion for summary judgment. Defendant has argued that plaintiff must use a carryover basis for the assets received in liquidation of its subsidiary, Wecco, because the acquisition of Wecco stock in a series of exchanges of stock for stock over a 14-month period either qualified as a C

reorganization or, alternatively, because it failed to qualify under section 334.[1] We denied the motion and decided both issues in favor of plaintiff. As we said in our opinion, defendant did not urge the court to construe this transaction as a B reorganization.[2]

In this petition, however, defendant requests the court to reconsider our conclusion that a B reorganization did not occur and either grant its motion for summary judgment or vacate the opinion and remand the case for a full trial on all of the facts. We concluded in our opinion that:

> Insofar as the facts of this case are concerned as [presented by the briefs and arguments before the court], Potash did not obtain control within a 12-month period, and we find that a B reorganization did not occur.

From the facts and arguments presented to us the only apparent issue was whether the transaction qualifies as a B reorganization when the series of acquisitions seeking control occurs over a 14-month period.

 Defendant submits, for the first time in this case, the argument that the 12-month rule of Treasury Regulation 1.368–2(c) is merely a guideline to determine which exchanges of a series of exchanges of stock for stock qualify as tax-free under the B reorganization provisions.[3] In our view, *all* of the individual acquisitions which form a series of stock for stock acquisitions over a period in excess of 12 months (which result in control) do not qualify as tax-free under the reorganization provisions unless the entire series is proved to have been part of a continuing offer to purchase. Defendant argues that plaintiff's admitted intent to acquire Wecco's assets reveals that there was a clear connection between all of the acquisitions and that therefore a continuing offer existed. Plaintiff's response is that two offers to purchase all of the stock are involved (which cannot be deemed a continuing offer) and, therefore, not having obtained control within 12 months, a B reorganization did not occur.

Alternatively, defendant argues that the final acquisition of 52% of the Wecco stock (whereby control was obtained) itself, qualifies as a tax-free exchange within the definition of a B reorganization and, therefore, a carryover basis for depreciation is appropriate for all of the assets later acquired by liquidation.[4]

---

1. At first blush it is possible to view our consideration of the step-transaction arguments in a C reorganization context as inconsistent with the disposition of the same issue in the context of section 334. In C reorganizations, the step-transaction doctrine has been applied to an exchange which qualifies as a reorganization and as part of the same transaction that qualifying exchange is followed by a liquidation of the acquired corporation. Potash's intent to acquire assets reveals its plan to obtain assets and no more; it does not establish the existence of a transaction which meets the statutory requirements for a C reorganization (or on the facts then before us, a B reorganization).

 In the section 334 area, we faced the issue of whether the step-transaction argument could be presented despite the enactment of section 334. We decided that the legislative history fails to reveal any intent by Congress to pre-empt the step-transaction approach; rather by section 334(b) (2) it established a degree of certainty in the area of parent-subsidiary liquidations and established a fixed rule as to transactions occurring within a 12-month period.

2. Defendant also states that plaintiff is not entitled to the equity of the *Kimbell-Diamond* doctrine because the transaction qualifies as a stock for stock reorganization. Defendant no longer argues that the *Kimbell-Diamond* approach is not viable, but that it is not applicable to the facts of this case.

3. We note again that this is not a situation where a corporation *purchases* some stock and in a later, independent transaction it acquires control by a stock exchange.

4. Neither party has addressed itself to the reasons for concluding that either a cost or carryover basis is appropriate for all of the assets received in liquidation, assuming that only 52% of the stock acquired qualifies as a tax-free reorganization exchange.

This assumes that several separate exchanges were made and that the last acquisition was not part of a continuing offer to acquire stock.

■ The facts surrounding the relationship between the two offers and the several exchanges, *inter se,* and their relationship to the later liquidation revolve around unsettled questions of fact. We, therefore, upon consideration of the arguments presented by both parties, deny defendant's request that the court either grant its motion for summary judgment or vacate its earlier opinion and we remand the case for trial and a recommended opinion pursuant to Rule 52(b) on the issue of whether a B reorganization occurred, in addition to the issues previously remanded.[5]

---

5. Ordinarily, a new issue raised for the first time in a petition for rehearing would be deemed too late for the court, but in this instance we make an exception for two reasons: (1) the court itself raised and discussed the question of a B reorganization in its opinion, and (2) the case has, in any event, been remanded for trial on the *Kimbell-Diamond* issue.