**Frederick H. VOGT**

v.

**The UNITED STATES.**

No. 427-74.

United States Court of Claims.

June 16, 1976.

George G. Tyler, New York City, atty. of record, for plaintiff; Cravath, Swaine & Moore and Peter C. Canellos, New York City, of counsel.

Joan Seitz Pate, Washington, D.C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D.C., for defendant; Theodore D. Peyser, Jr., and Robert S. Watkins, Washington, D.C., of counsel.

Before DAVIS, NICHOLS and BENNETT, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge:

In 1969 and 1970 plaintiff, a United States citizen, was a partner in a Danish accounting firm and had been a resident of Denmark for more than three years. As such, he was entitled by the Internal Revenue Code of 1954, § 911(a)(1), (c)(1)(B), to exclude $25,000 of earned income from the computation of his United States income tax. The sole issue now before us in this tax refund suit, raised by the parties' cross-motions for summary judgment, is whether the $25,000 exclusion is to be applied against plaintiff's share of partnership net income for 1969 and 1970 (plaintiff's position) or against his allocable share of partnership gross income for those years, with disallowance of a corresponding portion of his allocable share of partnership expenses (the Government's position). The parties have provided us with a stipulation of the facts pertinent to this question. Not covered by the stipulation nor before us at this time is an offset issue raised by the Government. It is agreed that this issue will be moot if the Government prevails on its motion for summary judgment but will have to be tried if the plaintiff wins here.

The simple facts are that taxpayer was a bona fide resident of Denmark for an uninterrupted period including January 1, 1966 through December 31, 1970. For the tax years in issue, 1969 and 1970, he was a partner in a Danish accounting firm, the gross income of which consisted entirely of fees received for services rendered outside the United States. In 1969 plaintiff's allocable shares of the partnership's gross income, expenses, and net profits were $348,-611, $243,850, and $104,761 respectively. In 1970 his shares were $470,045, $337,121, and $132,924.

In his tax returns for 1969 and 1970, plaintiff excluded $25,000 of his distributable share of partnership net profits as earned income attributable to services performed while a bona fide resident of a foreign country. Upon audit, the Internal Revenue Service disallowed the exclusion of $25,000 of net profits and substituted an exclusion of $25,000 of plaintiff's allocable share of the partnership's gross income. In that connection the Service disallowed the deduction of the portion of plaintiff's allocable share of partnership expenses that was attributable to the excluded gross income. The effect of these adjustments was to increase plaintiff's taxable income by the amount of disallowed expenses.[1] Plaintiff paid the deficiencies resulting from the Service's recomputation, filed proper refund

---

1. The following summary of the parties' calculations demonstrates the differences between the methods of computation:

|  | 1969 | 1970 |
|---|---|---|
| Plaintiff's share of partnership gross income | $348,611 | $470,045 |
| Plaintiff's share of partnership expenses | −243,850 | −337,121 |
| Plaintiff's share of partnership net income | 104,761 | 132,924 |
| Plaintiff's method of computation: | | |
| Share of partnership net income | 104,761 | 132,924 |
| Less $25,000 exclusion | −25,000 | −25,000 |
| | 79,761 | 107,924 |

| Service's method: | | |
|---|---|---|
| Share of partnership gross income | 348,611 | 470,045 |
| Less $25,000 exclusion | −25,000 | −25,000 |
| Reportable income | 323,611 | 445,045 |
| Deduction of share of partnership expenses: | | |
| Portion of expenses disallowed as attributable to excluded income | 25,000 / 348,611 | 25,000 / 470,045 |
| Expenses disallowed | 17,484 | 17,935 |
| Expenses allowed | 226,366 | 319,186 |
| Reportable income less allowed expenses | 97,245 | 125,859 |
| Difference in income subject to tax under the two methods: | | |
| Service's method | 97,245 | 125,859 |
| Plaintiff's method | −79,761 | −107,924 |
| | 17,484 | 17,935 |

claims, and timely filed suit in this court after disallowance.

## I

The Internal Revenue Code of 1954, in section 911(a)(1) and (c)(1)(B), excludes from gross income and exempts from tax $25,000 of foreign-source earned income received by a United States citizen who has been a bona fide resident of a foreign country for more than three years.[2] As we have said, we must determine whether the $25,000 of earned income excluded and exempt is $25,000 of a partner's share of partnership net profits, as plaintiff contends, or $25,000 of his share of partnership gross income, as the defendant urges. The Government asserts that the statute is clear and unambiguous and mandates the gross income interpretation. In its view, the section is structured in terms of gross income rather than net profits, and earned income,

the income designated as eligible for exclusion, "[h]istorically * * * has always been a gross income concept." The defendant concludes that the $25,000 excludable must be $25,000 of gross income, which in the case of a partner is his allocable share of partnership gross income. Int.Rev.Code of 1954 §§ 61(a)(13), 702(c). The Service finds further support for its position in the last sentence of section 911(a), disallowing deductions properly attributable to amounts excluded from gross income.

The plaintiff counters with emphasis on the statute's use of "and shall be exempt from taxation" and with quotations from committee reports showing Congress's focus on the amount exempt from taxation; he points out that under the Government's method the amount exempt from taxation, where the taxpayer is a partner, is less than $25,000 by the sum of disallowed deductions.[3] He also disputes the Government's

**2.** Section 911 provides, in pertinent part:

*(a) General rule.*

The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

*(1) Bona fide resident of foreign country.*

In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c).

\* \* \* \* \* \*

An individual shall not be allowed, as a deduction from his gross income, any deductions (other than those allowed by section 151, relating to personal exemptions) properly allocable to or chargeable against amounts excluded from gross income under this subsection.

*(b) Definition of earned income.*

For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or

profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

*(c) Special rules.*

For purposes of computing the amount excludable under subsection (a), the following rules shall apply:

*(1) Limitations on amount of exclusion.*

The amount excluded from the gross income of an individual under subsection (a) for any taxable year shall not exceed an amount which shall be computed on a daily basis at an annual rate of—

\* \* \* \* \* \*

(B) $25,000 in the case of an individual who qualifies under subsection (a)(1), but only with respect to that portion of such taxable year occuring [sic] after such individual has been a bona fide resident of a foreign country or countries for an uninterrupted period of 3 consecutive years.

**3.** *See* note 1 *supra.* With respect to the amount exempt from tax, plaintiff has graphically illustrated the discrimination between partners and employees receiving equal "salaries" which would result from the Govern-

claim that earned income has always been a gross income concept. Most importantly, however, the taxpayer has given us numerous examples of the Service's application of the section 911 exclusion against a partner's distributive share of partnership net income and ultimately rests his case on the assertion that he followed the long-standing administrative interpretation, which fixed the meaning of section 911, when he carved out $25,000 of his share of the partnership's net profits.

## II

If the plaintiff has accurately assessed the prevailing administrative practice and interpretation, as we believe he has,[4] we must hold for him unless the statute clearly and unambiguously demonstrates that the "partner's share of net profits" interpretation was wrong and mandates the gross income interpretation now urged by the Government. *See, e. g., Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969) (the construction of a statute by those charged with its execution should be followed unless

there are compelling indications that it is wrong); *Udall v. Tallman,* 380 U.S. 1, 16, 18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) (to sustain a contemporaneous administrative construction of a statute, a court need not find that the administrator's construction is the only reasonable one or that which the court would have reached; the construction need only be reasonable in itself). But as we now show in this part of our opinion, we do not see sufficient clarity in the statute or in its legislative history to override, for the tax years at issue, the interpretation by those charged with the statute's administration, applied consistently for many years.

■ Section 911 does not specifically address the partnership situation and, contrary to the Government's contention, is not structured around gross income. Although it does state, "The following items shall not be included in gross income," it continues by saying, "and shall be exempt from taxation." The amount to be excluded and exempt is described as "amounts received * * * which constitute earned income," not as gross income or as gross income which constitutes earned income. Further,

ment's interpretation. As shown by the following chart, an employee receiving $25,000 would be allowed to exclude the entire sum while partners receiving $25,000 would have to report as income subject to tax the amounts of disallowed partnership deductions.

| | Employee | Partner A | Partner B | Partner C |
|---|---|---|---|---|
| Amount received | $25,000 | $25,000 | $25,000 | $25,000 |

Partner A is a 50% partner in a partnership having $100,000 gross income and $50,000 expenses. Partner B is a 50% partner in a partnership having $200,000 gross income and $150,000 expenses. Partner C is a 50% partner in a partnership having $400,000 gross income and $350,000 expenses. A's partnership has a high level of profit, C's a low level.

| | | Employee | Partner A | Partner B | Partner C |
|---|---|---|---|---|---|
| Partners' shares of gross income | | | $50,000 | $100,000 | $200,000 |
| Partners' shares of expenses | | | 25,000 | 75,000 | 175,000 |
| *Government's method of calculation:* | | | | | |
| Gross income | | $25,000 | 50,000 | 100,000 | 200,000 |
| Less $25,000 exclusion | | −25,000 | −25,000 | −25,000 | −25,000 |
| | | 0 | 25,000 | 75,000 | 175,000 |
| Deduction of partnership expenses not disallowed | | | −12,500 | −56,250 | −153,125 |
| Reportable adjusted gross income (equal to disallowed expenses) | | 0 | 12,500 | 18,750 | 21,875 |

This chart shows not only discrimination between employees and partners receiving equal amounts; the member of the least profitable partnership has the greatest amount of income subject to tax. Thus, the Government's method results in discrimination among taxpayers employing the same method of doing business, with the tax burden bearing an inverse relationship to the profitability of the business.

---

4. *See* part III *infra.*

earned income is not defined in a way that makes it necessarily equivalent to gross income; the definition does not use "gross income" and instead expressly links the earned income of one group of taxpayers to net profits.[5] Looked at as a whole, the pertinent portions of the statute pair the exclusion from gross income with exemption from taxation, use "amount excluded from gross income" as a shorthand reference to the amount excluded and exempt, and designate "earned income" as the controlling concept.

█ In the Government's submission, however, the use of "earned income" is sufficient to require a gross income interpretation because earned income "[h]istorically * * * has always been a gross income concept." This pronouncement is demonstrably incorrect in the partnership context and otherwise overstated. In section 911 itself, the earned income of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors is tied to net profits, not to gross income.[6] In contexts other than the foreign-source income exclusion, net profits or net income definitions of earned income have surfaced. *See, e. g., Warren R. Miller, Sr.,* 51 T.C. 755, 762–63 (1969) (for purposes of the section 37 retirement income credit, which incorporates the section 911 definition of earned income, earned income is net profits in the self-employment situation); Int.Rev.Code of 1954, § 401(c)(2)(A) (for purposes of rules governing qualified pension and other plans for self-employed and owner-employees, the term "earned income" means net earnings from self-employment).[7] Most significantly, section 209 of the Revenue Act of 1924, creating an earned income credit, specifically stated: "In the case of the members of a partnership the proper part of each share of the net income which consists of earned income shall be determined under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary and shall be separately shown in the return of the partnership * * *."[8] Though

---

**5.** The definition of earned income lists several categories of income, not received by plaintiff, and provides a general description—"amounts received as compensation for personal services actually rendered." The remainder of the definition focuses on the concept of reasonable compensation for services rendered and measures reasonable compensation against net profits where the taxpayer's income derives from a service-and-capital business. *See* note 6 *infra* and accompanying text.

**6.** The parties stipulated that capital is not a material income-producing factor in the trade or business of plaintiff's accounting firm, so this provision does not command us to look to net profits in this particular case. However, as the Tax Court observed in an opinion interpreting section 37, which incorporates the section 911 definition of earned income: "In the case of a taxpayer 'engaged in a trade or business in which both personal services and capital are material income-producing factors,' however, earned income is keyed to the 'net profits of such trade or business,' not to the gross profits thereof. There is nothing in the language of the section to suggest that, in the case of a 'trade or business' in which capital is not a material income-producing factor but in which expenses are substantial, the focus should be on gross, rather than net, profits." *Warren R. Miller, Sr.,* 51 T.C. 755, 762 (1969).

**7.** "Net earnings from self-employment" is defined, in section 1402(a) of the Code, as the gross income of a trade or business carried on by an individual, less the deductions attributable to the trade or business, plus the individual's distributive share of the section 702(a)(9) taxable income or loss from the trade or business carried on by a partnership of which he is a member.

**8.** Revenue Act of 1924, ch. 234, § 209(c), 43 Stat. 264. Subsection (c) in effect supplemented subsection (a)(1), the general definition of earned income, which was almost identical to the definition of earned income which now appears in section 911(b). *Compare id.* § 209(a)(1) *with* Int.Rev.Code of 1954, § 911(b). Section 209 of the 1926 Revenue Act, unchanged in its material respects from section 209 of the 1924 Act, fixed the meaning of earned income for the purposes of the original version of section 911. *See* Revenue Act of 1926, ch. 27, § 213(b)(14), 44 Stat. 26. Thus, section 209(c) is in essence part of the legislative history of section 911 and not merely a portion of an old statute happening to use the very term that is the key to section 911.

The regulation under section 209(c) read: "The earned income credit will be allowed to the members of a partnership with respect to the share of the net income belonging to each which consists of earned income." Treas.Reg.

separated from the general earned income credit provision and placed with the partnership sections in the "supplemental provisions" of the 1928 and later revenue acts, this statute remained part of all revenue acts and the 1939 Code until the earned income credit was repealed,[9] and it established the composition of a partner's earned income for that period. We do not give conclusive effect to this old statute, though we think, with the Second Circuit, that "the rule it established is [a] natural way to interpret the foreign earned income exclusion in the partnership context." [10] But this older piece of legislation [11] and the others previously mentioned do demonstrate that earned income has not always been a gross income concept, that a net profit interpretation of earned income is reasonable in the partnership context, and that there is a crucial gap in the very statute (current section 911) which the Government wants us to declare so clear that even a long-standing administrative construction cannot stand against the statutory text.

■ There remains one other Government argument based on the words of section 911(a). Calling our attention to the last sentence, which requires disallowance of any deductions properly allocable to or chargeable against amounts excluded from gross income, the defendant tells us that the plaintiff's net income interpretation effectively abrogates this provision in the partnership situation. The primary weakness of this argument is that it presupposes the answer to the issue before us. The Government's application of the last sentence of section 911(a) would certainly be correct if the earned income excludable by a partner were plainly his share of partnership gross income, for partnership expenses attributable to excluded gross income would surely have to be excluded with the gross income. However, if the earned income to be excluded by a partner is his share of partnership net income, there are no partnership expense deductions to be taken or disallowed, just as there may be no expenses in the case of an employee (*see* note 3 *supra*). In short, the application of the last sentence of section 911(a) can be understood as merely following from the delineation of the earned income to be excluded; that sentence does not really clarify the

---

65, art. 1661 (1924). Later regulations under this statute, which became section 185 of the 1928 and later revenue acts, declared bluntly that "a member of a partnership is entitled to treat a proper part of his distributive share of the partnership net income as earned income." *E. g.*, Treas.Reg. 101, art. 185–1 (1939).

**9.** *See* Revenue Act of 1928, ch. 852, § 185, 45 Stat. 841; Revenue Act of 1932, ch. 209, § 185, 47 Stat. 223; Revenue Act of 1934, ch. 277, § 185, 48 Stat. 730; Revenue Act of 1936, ch. 690, § 185, 49 Stat. 1709; Revenue Act of 1938, ch. 289, § 185, 52 Stat. 522; Int.Rev.Code of 1939, ch. 2, § 185, 53 Stat. 70; Revenue Act of 1943, ch. 63, § 107(a), 58 Stat. 31 (1944) (repealing the earned income credit). Section 185 was included in the Revenue Act of 1932, even though the earned income credit was omitted from that Act and the definition of earned income that had appeared in the earned income credit provision was transferred to the predecessor of section 911. *See* Revenue Act of 1932, ch. 209, §§ 116(a), 185, 47 Stat. 204; 223 (exclusion of foreign-source earned income; partner's earned income); Revenue Act of 1928, ch. 852, § 31, 45 Stat. 804 (earned income credit and definition of earned income which was transferred to section 116(a) in 1932).

**10.** *Foster v. United States,* 329 F.2d 717, 719 (2d Cir. 1964). We cannot give conclusive weight to the old section because the statute was repealed and its contents were not made a part of section 911 or the regulations thereunder.

**11.** The Government in effect conceded the relevance of section 209(c), *supra,* when it cited section 209(a) of the 1924 Revenue Act as support for its argument that earned income has always been gross income. As the Government pointed out, section 209(a) defined not only "earned income" but also "earned income deductions" and "earned net income." However, if the Government's analysis of section 209(a) was intended to suggest that under that statute the plaintiff's share of partnership gross income would have been "earned income," his share of partnership expenses "earned income deductions," and his share of partnership net income "earned net income," the Government erred. Section 209(c) plainly referred to the share of partnership net income (a proper part thereof) as the earned income of a partner, not as his earned net income.

statute which is unclear in its controlling segments.[12]

■ Thus, we find the statute unclear, containing elements that lend support to the positions of both parties and elements of inadequate definition. To the extent that the legislative history elucidates section 911, it appears to give somewhat greater support to the plaintiff than to the Government.[13] Neither the statute nor the legislative history, however, gives us a sure footing on which to resolve the question whether a partner's earned income is his share of partnership net income or his allocable share of partnership gross income.

12. The plaintiff has made another significant attack on the importance the Government seeks to attach to the last sentence—the disallowance-of-deductions statement—in section 911(a). That statement, worded just as it is today, has been part of the foreign-source income exclusion from its inception in 1926. *See* Revenue Act of 1926, ch. 27, § 213(b)(14), 44 Stat. 26. In its early years, the provision could not have had the import now assigned to it by the Government, for a number of reasons. As the plaintiff emphasizes, from 1926 to 1952 (and to 1962, for some taxpayers) all foreign-source earned income of taxpayers meeting the statutory prerequisites was excluded, so the only purpose of the disallowance-of-deductions provision was to preclude the deduction of expenses incurred in earning foreign-source income from unearned income or from United States-source income. Further, the regulations implementing the deduction disallowance prior to 1957 recognized implicitly that amounts other than gross income could be excluded earned income and that in such instances the deduction disallowance provision did not come into play. Those regulations said, "In any case in which any amount otherwise constituting gross income is excluded from gross income under the provisions of section 116(a), there shall not be allowed as a deduction from gross income any items of expenses or losses or other deductions properly applicable to or chargeable against the amount so excluded from gross income." *E. g.,* Treas.Reg. 118, § 39.116–1(a)(3) (1953). Finally, until 1944 the Acts and Code expressly provided that a partner's earned income was a proper part of his share of partnership net income (see notes 8–9 *supra* and accompanying text), so the disallowance-of-deductions statement could not have affected his share of partnership expenses, as the Government would now have it do. Nothing in the statute or legislative history indicates that the impact of the disallowance-of-deductions

## III

■ Since we have ruled against the Government on the clarity of section 911 and remain in doubt on the reading to be given the text of the statute, we turn to the administrative interpretation.[14] That construction has received extensive attention from the taxpayer, who contends that, prior to challenging plaintiff's returns for 1969 and 1970 and the issuance of a contrary revenue ruling in 1975 (after this litigation had been begun), the Service consistently applied the net profits interpretation urged and followed by plaintiff.

sentence has changed, and the adoption of plaintiff's method will not permit the deduction of expenses attributable to excluded earned income from nonexcluded earned income, or from unearned income, in violation of the original purpose of what is now the last sentence of section 911(a).

13. Additional support for plaintiff can be found in the congressional reports quoted by plaintiff, because in those and other documents Congress demonstrated that its primary concern was the amount of income that escaped taxation. We shall not analyze the reports because they contain nothing directly on point and they are perhaps more confusing than clarifying. For example, one report referred to exclusion from taxable income. *See* S.Rep.No.1881, 87th Cong., 2d Sess. 76 (1962), U.S.Code Cong. & Admin.News 1962, p. 3297. The plaintiff ascribes great significance to this reference, but it clearly does not comport with the words of the statute and may reflect carelessness rather than the Committee's careful understanding of the operation of the provision.

14. We must look to sources other than the regulations under section 911, for those regulations do not assist us in resolving the partner's earned income issue. They add little to the statute, suffer from the same omissions and lack of clarity, and do not treat the partnership situation in text or examples. They do contain one provision which appears to favor the Government somewhat. *See* Treas.Reg. § 1.911–2(c)(2) (1963) (the entire amount received as professional fees by a taxpayer engaged in a professional occupation shall be treated as earned income under certain circumstances). However, the applicability of this limited section to the plaintiff is not clear enough to solve our problem in this case. *See* note 26 *infra*.

### A

█ Of most immediate significance are the forms and the *Tax Guide for U.S. Citizens Abroad* (I.R.S. Publication No. 54) given taxpayers by the Service. Through 1968, Form 2555, entitled "Statement to Support Exemption of Income Earned Abroad," listed these items under earned income: wages, salaries, bonuses, commissions, etc.; pensions and annuities; *allowable share of net profit for personal services rendered* in a business, in a profession, in farming, *in a partnership*; other income; allowances or reimbursements. The instructions included with the form did not amplify this clearly worded list of items to be included in earned income; they simply restated the statute's general definition of earned income and the statute's sentence governing a taxpayer engaged in a trade or business in which both services and capital are material income-producing factors, and added, in boldface capitals, examples of items that are not earned income. Like the form, the *Tax Guide for U.S. Citizens Abroad* explicitly treated a partner's share of partnership net profit, not of partnership gross income, as the sum to be considered in determining the partner's excludable earned income; the *Guide's* examples designed to illustrate the calculation of a partner's earned income all centered on the partnership net profits and the partner's share thereof.[15]

The Service has treated a partner's share of net income as the pertinent sum not only in the forms and in the *Tax Guide* but also in disputes with taxpayers in this and other courts. *See Carey v. United States*, 427 F.2d 763, 765–66, 192 Ct.Cl. 536, 540, 543–46 (1970); *Andrew O. Miller, Jr.*, 52 T.C. 752, 756–57 (1969) *acquiesced in*, 1972–2 Cum. Bull. 2; *Foster v. United States*, 221 F.Supp. 291, 292–93 (S.D.N.Y.1963), *aff'd*, 329 F.2d 717 (2d Cir. 1964); *Thomas Browne Foster*, 42 T.C. 974 (1964); *cf. Daniel A. Robida*, 29 CCH Tax Ct.Mem. 407 (1970), *aff'd*, 460 F.2d 1172 (9th Cir. 1972) (Commissioner applied $20,000 exclusion against adjusted gross income of "sole proprietor"). In each of these cases the Government and the partner disputed only the allocation, between foreign-source and United States-source income, of the partner's distributive share of partnership net income or of the amount actually received by the partner. The Government neither based its calculations on nor mentioned the partner's allocable share of partnership gross income.[16]

Buttressing this evidence of the Service position at least through 1968 are revenue rulings interpreting section 911 (and another provision in which section 911 plays a minor role) and regulations under the Code's partnership provisions. These rulings and regulations are more suggestive than explicit or conclusive, but they add to the force of plaintiff's arguments and analysis. They show that the Service has consistently assumed the net profits understanding of section 911 "earned income."

Revenue Ruling 55–171, 1955–1 Cum.Bull. 80, *declared obsolete*, Rev.Rul. 72–621, 1972–2 Cum.Bull. 651, listed two types of income under the heading "earned income"

15. In one especially apt example, the first on page 15, the 1968 edition of the *Guide* declared: "You and another taxpayer are management consultants and operate as an equal partnership in performing your services outside the United States. Since capital is not an income-producing factor, all the net profits from the partnership will be considered earned income." This example followed the statement that the 30-percent-of-net-profits limitation does not apply where only personal services, not capital, produce the income and demonstrated that through 1968 the Service shared the later-expressed Tax Court view that even when the 30 percent limit does not apply, the focus remains on net profits of a taxpayer engaged in a trade or business. *See* note 6 *supra*.

16. Although in *Thomas Browne Foster, supra*, the Tax Court used the phrase, "distributive share of partnership gross income," the figures and language used make clear that the Commissioner and court dealt only with the amount Foster actually received from the partnership. Foster's 4.08 percent of the partnership's gross income of $473,812.81 would have amounted to over $19,000. The Commissioner and court concerned themselves only with how much of the $14,115.06 actually received by Foster was excludable as foreign-source income.

—compensation for personal services rendered and profit from trade or business. In stating and illustrating the 30-percent-of-net-profits limitation where both capital and personal services are income-producing factors, the ruling said: "The balance of the profits must be included in gross income for Federal income tax purposes." *Id.* § 7, 1955–1 Cum.Bull. at 87. The implication is that the balance of net profits would not be included in gross income but for the 30 percent limit applicable because of the role of capital.[17] Revenue Ruling 67–158, 1967–1 Cum.Bull. 188, concluded that, where capital is not a material income-producing factor, "each partner's distributive share of that portion of partnership income representing compensation for services rendered by the partnership is 'earned income.'" In the only place in which the ruling referred to each partner's distributive share in the terms with which we are concerned, the ruling specified "distributive share of net partnership income." *Id.,* 1967–1 Cum.Bull. at 190, 189. Revenue Ruling 70–491, 1970–2 Cum.Bull. 92, interpreting section 401 of the Code, contains this statement: "Thus, under the provisions of section 1.401–10(c)(2) of the regulations and section 911 of the Code, up to $25,000 of net earnings is excluded from gross income and, consequently, does not constitute earned income under section 401(c)(2)." If the Service had viewed section 911 as it does now, the revenue ruling would have read, "Thus, under section 911 of the Code, up to $25,000 of gross income is excluded from gross income, and, under section 1.401–10(c)(2) of the regulations, the net earnings derived from this excluded gross income do not constitute earned income under section 401(c)(2)."[18] Finally, in Revenue Ruling 57–142, 1957–1 Cum.Bull. 246, *revoked on other grounds,* Rev.Rul. 66–326, 1966–2 Cum.Bull. 281, the Service stated the question as whether the earned income of a citizen operating a truck farm in Mexico was limited by the 30-percent rule or was his entire net earnings.

The regulations under two partnership provisions offer plaintiff some additional support. Section 1.702–1(c) lists numerous situations in which a partner must take into account his share of partnership gross income. This list does not include section 911, though the same regulation, four paragraphs earlier, requires the earned income of the partnership to be separately stated for all partners if any partner is a bona fide resident of a foreign country who may exclude, under section 911, the part of his distributive share which constitutes earned income. Treas.Reg. § 1.702–1(a)(8)(ii).[19] Example 2 in section 1.704–1(b)(2) declares that the Service ordinarily will recognize a partnership agreement allocating to a partner who is a resident of a foreign country a percentage of the profit derived from his operations in the foreign country greater than his distributive share of partnership income generally. This suggests once again that profit, not gross receipts, is the significant figure for a foreign resident partner.

**17.** This interpretation of Revenue Ruling 55–171 accords with the 1968 *Tax Guide for U.S. Citizens Abroad. See* note 15 *supra.*

**18.** The Government insists that we cannot read Revenue Ruling 70–491 strictly because that ruling deals primarily with section 401(c)(2), which defines earned income as net earnings from self-employment, and only tangentially with section 911. However, the ruling was issued to advise a self-employed United States citizen who was a resident of a foreign country on the interrelation of sections 911 and 401 because a regulation under section 401 excluded from earned income amounts excluded from gross income under other Code provisions. The Service certainly should have focused on a correct analysis of section 911 as necessary to provide proper advice to such a taxpayer. If it did not focus on section 911, the explanation may well be that it considered the meaning of section 911 too well settled to require special attention. *See Fribourg Navigation Co. v. Commissioner,* 383 U.S. 272, 280, 86 S.Ct. 862, 15 L.Ed.2d 751 (1966).

**19.** This regulation calls to mind the similar requirement in section 185 of the 1939 Code that earned income be separately stated for all partners. Section 185 was the statute which defined a partner's earned income as a proper part of his distributive share of partnership net income. *See* notes 8–9 *supra* and accompanying text.

**B**

█ Against this weighty evidence of an administrative interpretation coinciding with plaintiff's net profit construction the Government pits two cases, changes made in 1969 in form 2555 and in the *Tax Guide for U.S. Citizens Abroad*, and Revenue Ruling 75–86, 1975–1 Cum.Bull. 242.[20] In addition, the Government, in oral argument, labeled the net profits emphasis in the forms and tax guides prior to 1969 as a mistake and a hangover from the years before monetary limits were placed on the amount excludable,[21] when it mattered not whether the exclusion related to gross income or to net profits.

To take up first the last of these comments, the forms and guides cannot be dismissed so easily. The first monetary limitation on the amount of earned income excludable was imposed, against those merely present rather than resident abroad, in 1953. Form 2555 (used by taxpayers who meet the presence test and also by those coming under the residence test) as well as the tax guides continued the treatment of net profits as earned income for many years after 1953 and cannot be put down as mere careless hangovers. Moreover, all the other sources cited above (Part III, A), which the Government did not attempt to dismiss as hangovers, relate to the years after the first limit took effect and represent the

interpretation contemporaneous with the statutory changes.[22]

The two cases relied on by the Government, *Frieda Hempel*, 6 CCH Tax Ct.Mem. 743 (1947) and *Brewster v. Commissioner*, 154 U.S.App.D.C. 30, 473 F.2d 160 (1972), aff'g 55 T.C. 251 (1970), do not bear the weight placed on them. Both cases involved individuals (one an opera singer and the other a farmer), not carrying on business in the partnership form, who suffered losses in their foreign endeavors and sought to apply those losses as deductions from U.S.-source income. Although in both cases the courts held that part or all of the gross receipts had to be excluded as earned income and that the expenses had to be excluded to the same extent, the facts are quite distinguishable from the set now before us. As these courts recognized, the situations were exceptional; the holdings were necessary to prevent the deduction of foreign expenses from U.S.-source income.[23] Broad statements in opinions resting on such different facts and policies cannot prevail against the mass of directly apposite authority presented by plaintiff.

Similarly, the 1969 changes in form 2555 and the *Tax Guide for U.S. Citizens Abroad* were inadequate to alter the by then well established administrative rule that a partner's earned income was a proper part of his share of the partnership net income.

20. As already mentioned, the Government has placed its primary reliance on the statute and the maxim that an erroneous administrative interpretation can neither change the meaning of a clear statute nor excuse a taxpayer's obligation to pay the tax imposed by the statute. We have already determined (Part II, *supra*) that the statute is unclear and this principle is inapplicable.

21. For the most of its history, the foreign-source income exclusion reached all the foreign-source income of a citizen who met the residence or nonresidence requirements. Only in 1953 was the first monetary limit placed on the amount of earned income excludable; in 1953 a $20,000 limit was placed on the amount excludable by one who met the foreign presence, not the foreign residence, requirement. Technical Changes Act of 1953, ch. 512, § 204, 67 Stat. 618. In 1962 similar limitations were placed on the amount excludable by a resident of a foreign country—a $20,000 limitation was

effective during the first three years of foreign residence, and a $35,000 limitation took effect after those three years. Revenue Act of 1962, Pub.L. No. 87–834, § 11, 76 Stat. 1003. In 1964, the $35,000 limit applicable after three years was reduced to $25,000. Revenue Act of 1964, Pub.L. No. 88–272, § 237, 78 Stat. 128.

22. For example, Revenue Ruling 55–171, 1955–1 Cum.Bull. 80, issued shortly after the enactment of the limit on the amount excludable by one merely present abroad, clearly did not contemplate. the application of a different meaning of earned income to those for whom the limitation was effective. *Id.* §§ 4, 5, 7, 1955–1 Cum.Bull. at 82, 83, 87; *see* text at note 17 *supra.*

23. Such deduction would have violated the original purpose of the disallowance-of-deductions provision. *See* note 12 *supra.*

The pertinent change in the form itself consisted of the substitution of "income" for "net profit" in the line which had named "allowable share of net profit for personal services rendered in a partnership" as a type of earned income. Neither the form nor the instruction to which the form referred suggested whether "income" meant gross income, net or adjusted gross income, or amount received, and neither was altered in any way that would have alerted the taxpayer to the significance of the change in wording.[24] The only amendments in the *Tax Guide* were isolated substitutions of terms in the segment of the *Guide* headed "Profit from Trade or Business: Sole Proprietorship or Partnership."[25] In only one place was "gross income" substituted for "net profits"; in two places "earned income" (which, as we have seen, is not unambiguous) was used in lieu of "net profit," and in many no changes were made and the use of "net profits" continued. Thus, the minor alterations in 1969, if noticeable, were unclear and ambiguous at best. The Service certainly did not call taxpayers' attention to or clearly explain the changes, which therefore were inadequate to effect a turn-about in the long-standing interpretation which had prevailed until that time.

We are left, then, with Revenue Ruling 75–86, 1975–1 Cum.Bull. 242, as the only clear and pertinent administrative adoption of the interpretation the Government presses here.[26] This ruling, however, was issued only after this litigation began, does not state that it is to be retroactive, conflicts with the interpretation in effect during the tax years involved in this suit, and adversely affects this taxpayer. Whatever its prospective effect may be—an issue we are not called upon to decide—Revenue Ruling 75–86 cannot be applied retroactively to the plaintiff's 1969 and 1970 tax years. *See Crespo v. United States*, 399 F.2d 191, 185 Ct.Cl. 127 (1968); *American Potash & Chem. Corp. v. United States*, 399 F.2d 194, 205, 185 Ct.Cl. 161, 179, *on petition for reconsideration*, 402 F.2d 1000, 185 Ct.Cl. 186 (1968).[27]

24. The changes made in the instruction comprised the addition of a sentence parroting the statutory phrase on the earned income of a shareholder-employee of a corporation, the reduction of the listing of items that are not earned income from boldface capitals to regular type, and the separation of the former one paragraph instruction into two paragraphs.

25. This heading was not changed.

26. One provision of the regulations appears to add some partial weight to the Government's view; section 1.911–2(c)(2) stipulates that "[t]he entire amount received as professional fees shall be treated as earned income if the taxpayer is engaged in a professional occupation, such as a doctor or a lawyer, even though he employs assistance to perform part or all of the services, provided the patients or clients are those of the taxpayer and look to the taxpayer as the person responsible for the services performed." However, this limited regulation cannot be deemed clearly pertinent to this case. It does not mention the partnership situation, in which the partnership, not the taxpayer, receives the professional fees and is the "person" to which the clients look; and therefore it does not tell us that it is applicable to a partner or, if applicable, whether we should attribute to a partner a percentage of the partnership's professional fees or, instead, the fees paid by clients for whom the partner is assigned responsibility. Nor does it deal, even for the single professional, with expenses other than compensation to assistants and represents, at best, only a partial thrust toward a gross income interpretation. Upon analysis, the paragraph becomes another example of the failure of the Service to deal with partnerships in the section 911 regulations. In its application only to professionals, it also illustrates the discrimination that may result between various taxpayers performing similar services and receiving equal pay. *Cf.* note 3 *supra.* The regulation, in force while the Service was following a net profit interpretation in cases such as *Carey v. United States*, 427 F.2d 763, 192 Ct.Cl. 536 (1970) (involving, as this case does, a partner in an accounting firm) and in the tax forms and guides, is not enough, standing alone, to prevent the implementation in this suit of the net profit construction. *See* Treas.Reg. § 1.911–2(c)(2) (1963) (identical to Treas.Reg. § 1.911–1(a)(4) (1957)).

27. The Government did not argue for retroactive application of this ruling; it cited the ruling only as the latest example of the pre-existing Service gross income interpretation, but we have determined that the pre-existing construction was to the contrary.

C

In conclusion, then, plaintiff has demonstrated that the long-standing administrative interpretation, manifested in many publications and actions, related a partner's earned income to his share of partnership net income. The Government has countered the plaintiff's analysis only with an interpretation reached many years after all significant legislative action had been completed (and after the tax years in issue) and with a suggestion that the Service had not focused on the issue prior to the taxable years. We can say with the Supreme Court in *Fribourg Navigation Co. v. Commissioner*, 383 U.S. 272, 280, 86 S.Ct. 862, 867, 15 L.Ed.2d 751 (1966), that "[t]his is hardly a persuasive response to the overwhelmingly consistent display of his [the Commissioner's] position." The net income interpretation for partners, contemporaneous with the first statutory imposition of limits on the amount excludable and maintained for many years through changes in the statute, fixed the meaning of section 911 for this taxpayer during the years in suit, 1969 and 1970. *See NLRB v. Bell Aerospace*, 416 U.S. 267, 274–75, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Fribourg Navigation Co. v. Commissioner*, *supra* at 279–86, 86 S.Ct. 862; *Udall v. Tallman*, 380 U.S. 1, 16–18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *United States v. Leslie Salt Co.*, 350 U.S. 383, 388–97, 76 S.Ct. 416, 100 L.Ed. 441 (1956). In the light of the ambiguity of section 911, that interpretation was clearly reasonable.

Plaintiff's motion for summary judgment is granted, defendant's motion is denied, and the case is remanded for further proceedings under Rule 131(c) to determine the amount of plaintiff's recovery, with any offset to which the defendant may be entitled taken into account.[28]

28. Because we have ruled in favor of plaintiff, the offset issue raised by the Government must be tried.